# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2983

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Minnesota. |
| | * | |
| Andres Romero, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: March 12, 1998
Filed: July 22, 1998

_____

Before WOLLMAN and HANSEN, Circuit Judges, and GOLDBERG,[1] Judge.

_____

HANSEN, Circuit Judge.

Andres Romero appeals his drug conspiracy related convictions, arguing that the evidence was insufficient to support venue in the District of Minnesota because his activities were confined to the state of Florida. We affirm.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

## I.

Andres Romero, a Florida resident, was arrested in Florida for supplying cocaine to several smaller cocaine traffickers in Minnesota. The evidence at trial showed the following. In May or June 1990, Neil Connelly, a Minnesota resident and cocaine trafficker, drove to Florida to obtain cocaine for his Minnesota customers from a long-time acquaintance, Greg Clark. Clark called Romero to see if Romero could supply the cocaine Connelly wanted; Clark said that he told Romero he had "friends that were in the business from Minnesota, or from the north, and that they were interested in buying cocaine." (Trial Tr. at 262.) From then on, Romero regularly supplied Clark with all the cocaine needed to satisfy Connelly and his Minnesota customers. Connelly made monthly trips to Florida to purchase the cocaine, which he would transport back to Minnesota for further distribution. Romero began fronting the cocaine (that is, providing it on credit) to Clark, who would then repay Romero after receiving payment from Connelly.

After Connelly died in 1995, Doug DeMalignon, another Minnesota resident and prior acquaintance of Clark, took over Connelly's Minnesota drug trade operation. The operation continued, but at this point, Clark began personally transporting the cocaine (approximately four to ten kilograms a trip) to Minnesota every six to eight weeks. For each kilogram, Romero charged Clark between $22,000 and $26,000, and Clark added one to two thousand dollars to the price when he in turn sold it to DeMalignon. Romero continued fronting these large amounts of cocaine to Clark in Florida, and Clark fronted the cocaine to DeMalignon in Minnesota, thereby deferring DeMalignon's payment until Clark's next trip to the north. Sometimes DeMalignon would send the money to Clark one or two weeks later by UPS delivery. DeMalignon's customers included Mike Jones, Bob Cory, James McCann, and Charles Turner, most of whom would purchase one or two

kilograms of cocaine at a time from DeMalignon. Clark delivered a total amount of approximately 60 kilograms of cocaine to DeMalignon.

The investigation leading to Romero's arrest began on July 25, 1996, when local law enforcement officers in Minnesota arrested Peter Vitale, who, along with David Mathison, was one of James McCann's customers. Vitale agreed to cooperate and arranged a controlled buy of two kilograms of cocaine from McCann at a price of $57,000. After McCann accepted the money, officers arrested McCann, and he agreed to cooperate. McCann implicated DeMalignon as his source, and officers then arrested DeMalignon as well. DeMalignon agreed to cooperate, identifying his customers and identifying Clark as his source of cocaine. Officers directed DeMalignon to arrange a deal with Clark, requesting from him as much cocaine as possible. After DeMalignon contacted Clark, Clark arranged a meeting with Romero to obtain the cocaine. He obtained 11 kilograms of cocaine from Romero in Florida and drove to Minnesota with it hidden inside his car. Officers arrested Clark in Minnesota when he attempted to deliver the 11 kilograms of cocaine to DeMalignon. Like the others, Clark also agreed to cooperate with the law enforcement officers. He named Romero as his source.

At the direction of law enforcement officers, Clark arranged a meeting with Romero in Miami, Florida, to obtain cocaine and to pay Romero approximately $249,000, which he owed for cocaine that Romero had previously fronted him. Clark told Romero he could not meet until the following afternoon, because he was "waiting for money to come from up north." (Trial Tr. at 300.) Romero agreed to the meeting, saying he had "new product" available. (Id.) The meeting the next day was tape-recorded and videotaped. Without mentioning the word cocaine, Clark and Romero discussed the price and quality of the product. Clark inquired about when he could get more and how much Romero had available. Romero told Clark he could provide three kilograms that day and that it was better quality than "the previous."

(Id. at 303.) Clark brought a suitcase to the meeting purporting to contain the $249,000 he owed Romero, though in reality it contained only magazines. Law enforcement officers arrested Romero when he took the suitcase from Clark's car and seized three kilograms of cocaine from Romero's condominium in Miami.

The government charged Romero, Clark, DeMalignon, McCann, Jones, Turner, Cory, Vitale, and Mathison with conspiracy to distribute and to possess with intent to distribute in excess of five kilograms of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) (1994). Additionally, the government charged Romero with aiding and abetting Greg Clark in possessing approximately 11 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), and 18 U.S.C. § 2. Romero stood trial before a jury in the District of Minnesota with one other defendant. Clark and DeMalignon entered into plea agreements and testified against Romero. Romero was convicted on both counts against him. The district court[2] sentenced him to a term of 188 months of imprisonment, and Romero appeals.

## II.
## A.

Romero's first contention is that venue in Minnesota was not proper for the conspiracy charge, because the proof offered at trial did not demonstrate that he was involved in a drug conspiracy in Minnesota.

"'Proper venue is required by Article III, § 2 of the United States Constitution and by the [S]ixth [A]mendment, as well as Rule 18 of the Federal Rules of Criminal Procedure.'" United States v. Granados, 117 F.3d 1089, 1091 (8th Cir. 1997)

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

(quoting United States v. Bascope-Zurita, 68 F.3d 1057, 1062 (8th Cir. 1995), cert. denied, 516 U.S. 1062 (1996)). Rule 18 provides that the prosecution shall be had in a district in which the offense was committed, but Congress has further provided that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); Granados, 117 F.3d at 1091. Furthermore, although separate proof of an overt act is not a necessary element of a drug conspiracy under 21 U.S.C. § 846, see United States v. Shabani, 513 U.S. 10, 17 (1994), "venue is proper in a conspiracy case in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators," Bascope-Zurita, 68 F.3d at 1062 (internal quotations omitted).

Romero argues that the government did not prove the conspiracy it charged, but two separate conspiracies--one in Minnesota involving Clark, DeMalignon, and all the Minnesota customers and a separate one in Florida involving a buyer-seller arrangement between Clark and Romero. Romero concedes that he was part of an agreement to distribute drugs to Clark in Florida. (Appellant's Br. at 21 (arguing, "Romero's 'agreement' was to distribute drugs to Clark in Florida").) Nevertheless, he maintains he was not part of the Minnesota conspiracy because he did not know the Minnesota people, he had no direct involvement or connection with anyone in Minnesota, and he had no knowledge of Clark's distribution activities in Minnesota. Thus, he contends, there is no evidence to support venue in Minnesota. We disagree.

"To prove that a defendant was a member of a conspiracy to manufacture or to distribute illegal drugs, the government must demonstrate (1) that there was a conspiracy, i.e., an agreement to manufacture or to distribute, (2) that the defendant knew of the conspiracy, and (3) that the defendant intentionally joined the conspiracy." United States v. Hester, 140 F.3d 753, 760 (8th Cir. 1998). Whether the

government has proven the existence of a single conspiracy or multiple conspiracies is a question of fact for the jury to decide. Id. "A single conspiracy requires one overall agreement to perform various functions to achieve the objectives of the conspiracy." United States v. Reibold, 135 F.3d 1226, 1230 (8th Cir. 1998) (internal quotations omitted), cert. denied, 66 U.S.L.W. 3800, 1998 WL 273441 (U.S. June 22, 1998) (No. 97-9113). "One conspiracy may exist despite the involvement of multiple groups and the performance of separate acts," id., and conversely, an overlap of the persons involved does not necessarily prove one overall agreement. United States v. Morales, 113 F.3d 116, 119 (8th Cir. 1997). It is essential for the government to prove that the defendant had knowledge of the object of the conspiracy. See United States v. Dolan, 120 F.3d 856, 868 (8th Cir. 1997).

In this case, the district court instructed the jury to determine whether there was a single conspiracy involving participants in both Minnesota and Florida or two separate conspiracies (one in Florida and one in Minnesota). The district court correctly instructed that if the government did not prove that the defendant was a member of the conspiracy charged in the indictment, the jury must find him not guilty on the conspiracy charge. (Instr. 10, Clerk's R. at 82.) The jury found one single conspiracy and convicted Romero. "In determining whether a single or multiple conspiracy exists, we view the evidence in the light most favorable to the jury's verdict." United States v. Cabbell, 35 F.3d 1255, 1262 (8th Cir. 1994).

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient for the jury to find that the government proved a single conspiracy and that the record therefore demonstrates venue was proper in Minnesota. We note initially that the government presented ample evidence proving the existence of a conspiracy involving Clark and the Minnesota customers and proving that many acts in furtherance of this conspiracy took place in both Minnesota and Florida. "Once a conspiracy has been proven, even 'slight evidence' of a

defendant's participation is sufficient to support a conviction." Dolan, 120 F.3d at 868. Romero's participation as the main source of cocaine for the conspiracy is sufficient evidence from which to conclude that he knowingly participated in the conspiracy. Clark's testimony indicated that he initially informed Romero that he needed cocaine to satisfy customers "in Minnesota, or from the north" (Trial Tr. at 262), and all of the testimony indicated that Clark funneled the cocaine he purchased from Romero to the Minnesota customers.

Romero sold large quantities of cocaine to Clark to satisfy the Minnesota customers and also fronted large amounts to Clark, apparently confident that Clark would return with the money after his next distribution trip to Minnesota. In this manner, Romero had a financial interest in the conspiracy, which was dependent upon Clark receiving payment from customers in Minnesota who were further down the chain of distribution. Romero argues that Clark was obligated to pay him regardless of whether the Minnesota customers paid, and that therefore he had no financial interest that was dependent upon the Minnesota conspiracy. This argument, however, attempts to bring a sense of contractual legitimacy into Romero's illegitimate relationship with Clark, which simply cannot exist with regard to contraband.

Romero attempts to show that he was not part of the conspiracy by noting that he knew no one in Minnesota and no one in Minnesota knew that he was Clark's source. It is immaterial that Romero did not know all of the participants in the conspiracy or that the customers in Minnesota did not know him. The evidence demonstrates that the participants were all working together in furtherance of the object of the conspiracy--cocaine distribution from Florida to Minnesota--in spite of the fact that they did not all know of each other. "Neither the law, nor logic, requires that all of the conspirators know each other or the full extent of the conspiracy's reach." United States v. Slaughter, 128 F.3d 623, 630 (8th Cir. 1997). Romero was

fueling the conspiracy with large amounts of cocaine which he knew were traveling out of Florida and to the north through Clark. We conclude that there is sufficient evidence in the record to connect Romero to the Minnesota conspiracy, and because many acts of the conspiracy took place in Minnesota, venue was proper in Minnesota.

We reject Romero's contention that he was not part of the Minnesota conspiracy because his relationship with Clark was that of a mere buyer and seller in Florida. Romero correctly asserts that we have held that "a mere sales agreement between a buyer and seller with respect to contraband does not constitute a conspiracy." United States v. Jensen, 141 F.3d 830, 833 (8th Cir. 1998) (internal quotations and alterations omitted). The situation here, however, goes far beyond a mere sales agreement and does not indicate mere personal use on the part of the buyer. See Hester, 140 F.3d at 757 (noting the mere buyer-seller instruction is not appropriate when there is evidence of multiple drug transactions as opposed to a single isolated sale). The evidence is sufficient to support a conspiracy where the drugs were purchased for resale. See United States v. West, 15 F.3d 119, 121 (8th Cir.), cert. denied, 513 U.S. 863 (1994); United States v. Brown, 946 F.2d 58, 61 (8th Cir. 1991). The huge amounts of cocaine involved here clearly indicate that resale was the purpose of the transactions between Romero and Clark. Furthermore, as already noted, while Romero may not have known the Minnesota people, he was aware that Clark was not purchasing for his personal use, that others were involved in further distribution of the cocaine, and that the conspiracy involved trafficking cocaine to the north and out of Florida through Clark. Also, because the evidence supports the conspiracy charged in the indictment and venue in Minnesota, there is no variance from the indictment which would make venue in Minnesota improper.

Romero also asserts that the district court erred by not submitting to the jury an instruction on venue for the conspiracy count. The non-submission of such an

-8-

instruction does not require reversal in this case. While "[v]enue is ordinarily a question of fact for the jury," "when the evidence clearly shows that the events underlying a charged offense occurred in a particular jurisdiction, the failure to give the jury a venue instruction may be harmless error." Bascope-Zurita, 68 F.3d at 1062. The refusal to give a venue instruction is not reversible error if the jury's guilty verdict necessarily incorporated a finding of proper venue. United States v. Carter, 130 F.3d 1432, 1438 (10th Cir. 1997) (holding jury verdict on conspiracy necessarily included a finding that venue was proper in New Mexico where the jury found the conspiracy existed at the time cocaine was being transported through New Mexico), cert. denied, 118 S. Ct. 1856 (1998). In the present case, the indictment recited in Jury Instruction No. 7 charged a cocaine distribution conspiracy occurring "in the State and District of Minnesota and elsewhere." (R. at 76.) There is no dispute that many acts of cocaine distribution in furtherance of the charged conspiracy occurred in Minnesota, where Clark was in possession of a large amount of cocaine. The jury was specifically instructed on venue for the aiding and abetting of Clark's possession of cocaine in Minnesota. (See R. at 86.) The guilty verdict on that possession count and the jury's finding that a conspiracy existed as charged in the indictment necessarily included a finding that the conspiracy also extended to Minnesota. Thus, the district court's refusal to instruct the jury on venue for the conspiracy charge was harmless error at most and not reversible error.

We note that our analysis on the venue issue is not altered by the Supreme Court's recent decision in United States v. Cabrales, 118 S. Ct. 1772 (1998). Affirming an opinion of this court, see 109 F.3d 471, as amended, 115 F.3d 621 (8th Cir. 1997), the Court held in Cabrales that there was no venue in Missouri for money laundering counts where all the laundering alleged in the indictment occurred in Florida. See 118 S. Ct. at 1774. The Court stated, "[n]otably, the counts at issue do not charge Cabrales with conspiracy; they do not link her to, or assert her responsibility for, acts done by others. Nor do they charge her as an aider or abettor

in the Missouri drug trafficking." Id. at 1776. Thus, the Court's opinion in Cabrales simply does not address the issues of this case, except to the extent the Court indicates that if the government links Cabrales to the drug trafficking activities or to the conspiracy, she "can be prosecuted in Missouri for that confederacy." Id. at 1777.

B.

Romero's second argument is that the government did not prove venue in Minnesota was proper on the count charging him with aiding and abetting Clark's possession of cocaine in Minnesota. The district court included a venue instruction on this count. Although Clark was arrested in Minnesota while in possession of 11 kilograms of cocaine, Romero contends that he had no part in aiding or abetting Clark's possession of the cocaine in Minnesota because he actually transferred the cocaine to Clark in Florida.

"[A]n aider and abetter may be tried in the district in which the principal committed the substantive crime." United States v. Buckhanon, 505 F.2d 1079, 1083 (8th Cir. 1974). There is no question that Clark was in Minnesota when he was arrested in possession of 11 kilograms of cocaine that he had obtained from Romero. The evidence supports the jury's conclusion that Romero aided and abetted that possession by supplying the cocaine to Clark, knowing that Clark would further distribute it to his northern customers. Thus, venue was proper for the aiding and abetting charge even though there was no evidence that Romero was ever physically present in Minnesota while Clark was committing the possession offense in Minnesota. See id. (holding defendant-wife was properly convicted in Minnesota as an aider and abetter of her husband's possession of drugs in Minnesota though she had never been present in Minnesota and she had been acquitted on the conspiracy charge).

-10-

## III.

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.