# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2560

———————

United States of America,        *
       *
            Appellee,        *
       *    Appeal from the United States
            v.        *    District Court for the
       *    Northern District of Iowa.
Raul Padilla Morales, also known as        *
Santos Escmilla-Avalos,        *
       *
            Appellant.        *

———————

Submitted: January 12, 2006
Filed: April 26, 2006

———————

Before SMITH and HANSEN, Circuit Judges, and BOGUE,[1] District Judge.

———————

SMITH, Circuit Judge.

Raul Padilla Morales appeals his conviction for conspiracy to distribute 500 grams or more of methamphetamine within a protected location, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 860(a).[2] Morales contends that his post-verdict

———————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

motion for acquittal should have been granted due to improper venue. In the alternative, Morales challenges his sentence in several respects. We affirm.

## I. *Background*

Undercover Officer Rich Shuck and a confidential informant met with Jose Lopez-Guido at a residence in Sioux City, Iowa, to purchase a half pound of methamphetamine. The informant entered the residence, and Lopez-Guido told him that the methamphetamine was located at a residence at 1113 F Street in South Sioux City, Nebraska. Raul Padilla Morales lived at this residence. Lopez-Guido instructed the informant to follow him to that location. Officer Shuck and the informant then followed Lopez-Guido by car. Upon arrival, Lopez-Guido retrieved 70.3 grams of methamphetamine. Morales was working and thus not home at the time. Lopez-Guido sold the methamphetamine to the undercover agent and offered to provide the remainder after Morales, who controlled the drugs, returned from work later in the day.

Several days later, Officer Shuck and the informant met with Lopez-Guido in the parking lot of Tyson Foods in Dakota City, Nebraska. Lopez-Guido again asked the informant and undercover officer to follow him to Morales's home, where Lopez-Guido obtained 167.4 grams of methamphetamine and sold it to the undercover officer. Lopez-Guido said he or another person would deliver another two ounces later in the day. Later that day, Morales called the informant, advising him to come to Riverview Apartments in South Sioux City, Nebraska.[3] There, Morales arrived in a gold Dodge Intrepid and hand-delivered 53.3 grams of methamphetamine to Officer Shuck.

Eight days later, Lopez-Guido met with the same informant and Special Agent Hunter Bellon in the Tyson Foods parking lot. Lopez-Guido got into the car with

---

[3]This location is within 1,000 feet of a protected area.

them. After a brief conversation in Spanish between Lopez-Guido and the informant, Lopez-Guido asked them to wait for a moment and exited the vehicle. Lopez-Guido then walked over to and spoke with Morales, who was standing nearby in the parking lot. After this conversation, Lopez-Guido returned to the vehicle and told Special Agent Bellon and the informant to meet him at the Riverview Apartments. Lopez-Guido and Morales then drove away together.

Shortly thereafter, Lopez-Guido drove up in the gold Intrepid and sold 270 grams of methamphetamine to Special Agent Bellon and the informant. The parties also arranged for the delivery of another six ounces later that day at the same location. Surveillance officers followed Lopez-Guido to Morales's residence. Some time later, Morales was stopped in the gold Intrepid in route from his house toward the meeting place. Law enforcement seized 175 grams of methamphetamine from Morales's vehicle.

Morales and Lopez-Guido were charged in the Northern District of Iowa with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine within 1,000 feet of a protected location. Lopez-Guido pled guilty, and Morales proceeded to trial. After the jury convicted him, Morales filed a renewed motion for acquittal, alleging that the prosecution failed to show that he was involved in a conspiracy within the Northern District of Iowa. The district court denied the motion.

At sentencing, the district court determined by a preponderance of the evidence that Morales was responsible for 736 grams of methamphetamine. The district court then calculated Morales's advisory Guidelines range to be 151–188 months' imprisonment, based on a total offense level of 34 and a category I criminal history. The district court denied all of Morales's requests for downward adjustments under the Guidelines.

However, the district court ultimately sentenced Morales below the advisory Guidelines range. The district court held that a 132-month sentence was reasonable under 18 U.S.C. § 3553(a)(6), which requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The district court noted that Lopez-Guido was sentenced to the statutory minimum of 120 months' imprisonment. The court declined Morales request for adjustments based upon acceptance of responsibility and for his role in the offense. The court reasoned that Morales had shown not entitlement to acceptance of responsibility by his offer to plead guilty. The court also noted that co-defendant Lopez-Guido received a lesser sentence than Morales because Lopez-Guido did show entitlement to acceptance of responsibility. However, the court also determined that the variance between the sentences of the two co-conspirators should not differ as much as they would if Morales were given a Guidelines sentence. The district court then sentenced Morales to 132 months' imprisonment.

Morales appeals the district court's denial of his motion for a judgment of acquittal, arguing that the government failed to prove that the conspiracy commenced or occurred in the Northern District of Iowa. In the alternative, Morales challenges his sentence, asserting that the district court erred by (1) finding drug quantity by a preponderance of the evidence; (2) denying Morales's motions for downward adjustments; and (3) imposing an unreasonable sentence.

## II. *Venue*

We review de novo the denial of a motion for judgment of acquittal, and we reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Howard*, 413 F.3d 861, 864 (8th Cir. 2005) (internal quotations and citations omitted). "We evaluate the evidence in the light most favorable to the government and draw all reasonable inferences in its favor." *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004).

-4-

"Proper venue is required by Article III, § 2 of the United States Constitution and by the Sixth Amendment, as well as Rule 18 of the Federal Rules of Criminal Procedure." *United States v. Romero*, 150 F.3d 821, 824 (8th Cir. 1998) (brackets, citations, and internal quotations omitted). A violation of federal law may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "Furthermore, although separate proof of an overt act is not a necessary element of a drug conspiracy under 21 U.S.C. § 846, venue is proper in a conspiracy case in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators." *Romero*, 150 F.3d at 824 (citations and internal quotations omitted).

Based on the evidence presented at trial, a jury could reasonably infer that an overt act in furtherance of the conspiracy took place within the Northern District of Iowa, making venue proper there. Law enforcement's first meeting with co-conspirator Lopez-Guido took place in Sioux City, Iowa, which is in the Northern District of Iowa. The meeting was pre-arranged for the purpose of a methamphetamine transaction. At the meeting, Lopez-Guido told the informant to follow him to where the methamphetamine was located. The informant and Officer Shuck then followed Lopez-Guido across the river to Morales's home in South Sioux City, Nebraska. Morales was not home, but Lopez-Guido obtained 70.3 grams of methamphetamine and sold it to the undercover officer. Lopez-Guido indicated that he could sell the undercover officer more methamphetamine later that day after Morales got home from work. The second sale involved a similar pattern: meeting in one place and then driving to Morales's home to obtain the narcotics. The third sale was set up by Lopez-Guido, but Morales arranged the meeting place and hand-delivered the narcotics, driving the gold Intrepid. Prior to completing the fourth transaction, Lopez-Guido left the law enforcement officers to confer with Morales and then instructed the officers to travel to the location of the third transaction to pick up the narcotics. Lopez-Guido delivered the narcotics in the gold Intrepid and set up another transaction. Morales

was arrested on his way to making that delivery with the amount of narcotics discussed and was driving the gold Intrepid.

Given these facts, a jury could reasonably infer that Morales and Lopez-Guido conspired to distribute methamphetamine before Lopez-Guido's initial meeting with the informant and Officer Shuck. Thus, Lopez-Guido's initial meeting constituted an overt act in furtherance of the conspiracy. Because this overt act took place within the Northern District of Iowa, venue was proper there.

### III. *Sentencing*

"We review a challenge to the district court's interpretation and application of the advisory guidelines de novo and the court's factual findings for clear error." *United States v. Blazek*, 431 F.3d 1104, 1109 (8th Cir. 2005).

Morales objects to the district court determining the drug quantity attributable to him by a preponderance of the evidence. Specifically, Morales argues that the jury's verdict capped the drug quantity attributable to him at 500 grams. As an initial matter, the jury verdict did not cap drug quantity at 500 grams: the jury found Morales guilty of conspiring to distribute 500 *or more* grams of methamphetamine. *See United States v. Fellers*, 397 F.3d 1090, 1099–1100 (8th Cir. 2005) (holding that the district court's finding attributing more than 500 grams of methamphetamine to the defendant violated the Sixth Amendment because the jury found the defendant responsible for between 50 and 500 grams of methamphetamine, specifically rejecting an alternative verdict that would have found the defendant responsible for more than 500 grams). Furthermore, a sentencing court is permitted to find facts by a preponderance of the evidence. *United States v. Garcia-Gonon*, 433 F.3d 587, 593 (8th Cir. 2006) ("Under an advisory Guidelines regime, sentencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence."). The district court's calculation of drug quantity is not clearly erroneous.

Next, Morales challenges the district court's refusal to grant downward adjustments for his alleged minor role in the offense and acceptance of responsibility. A defendant bears the burden of demonstrating his entitlement to a minor participant reduction pursuant to U.S.S.G. § 3B1.2. *United States v. Thompson*, 60 F.3d 514, 517 (8th Cir. 1995). "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." *United States v. Ramos-Torres*, 187 F.3d 909, 915 (8th Cir. 1999). The evidence at trial showed Morales exercised some supervision of Lopez-Guido; therefore, the district court did not err in refusing to grant Morales a downward adjustment pursuant to § 3B1.2.

The district court did not err by declining to adjust downward under U.S.S.G. § 3E1.1(a) because Morales did not accept responsibility but chose to put the government to its burden of proof at trial. Prior to trial, Morales offered to plead guilty to conspiracy to distribute the six ounces found in his vehicle at the time of his arrest, and the government refused. Morales urges that he should be given some credit for this offer. However, his offer was not a full acceptance of responsibility. *United States v. Atlas*, 94 F.3d 447, 452 (8th Cir. 1996) ("The inquiry under § 3E1.1(a) is whether the defendant did or did not accept responsibility. Nothing in the text of the guideline or its commentary suggests that the district court may deviate from the guidelines for 'partial acceptance' of responsibility."). Therefore, the district court did not err by finding that Morales failed to accept responsibility.

Finally, Morales argues that his sentence, which is 19 months below the applicable Guidelines range, is unreasonable under the factors set forth in 18 U.S.C. § 3553(a) and that he should be sentenced to the 120-month statutory minimum.

"We review sentences within or outside the guidelines range for reasonableness." *United States v. Hawkman*, 438 F.3d 879, 882 (8th Cir. 2006). In

determining reasonableness, the "primary point of reference" is 18 U.S.C. § 3553(a). *United States v. Hadash*, 408 F.3d 1080, 1083 (8th Cir. 2005). "Reasonableness review is 'akin to abuse of discretion review[.]'" *United States v. Sebastian*, 436 F.3d 913, 915 (8th Cir. 2006) (quoting *United States v. Rogers*, 423 F.3d 823, 829 (8th Cir. 2005)). An abuse of discretion may occur "if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005).

We hold that the district court did not abuse its discretion by sentencing Morales to 132 months' imprisonment. The district court appropriately considered the § 3553(a) factors and determined that a 132-month sentence was reasonable in light of Lopez-Guido's sentence. *See* § 3553(a)(6). Although co-conspirator Lopez-Guido only received a 120-month sentence, he established entitlement to a downward adjustment based upon his acceptance of responsibility, whereas Morales did not make such a showing. In addition, as mentioned previously, the evidence presented at trial indicated that Morales supervised Lopez-Guido. Therefore, Morales's sentence is not unreasonable.

## IV. *Conclusion*

We affirm the district court's decision in all respects. First, the overt act by Morales's co-conspirator in the Northern District of Iowa rendered venue proper there, making the denial of Morales's motion for a judgment of acquittal correct. Second, the district court did not err by finding the drug quantity attributable to Morales by a preponderance of the evidence, and the drug quantity calculated is not clearly erroneous. Third, we affirm the refusal to grant Morales's requests for downward adjustments for his role in the offense and acceptance of responsibility, as the record

demonstrates that Morales did not qualify for those credits. Fourth, the district court did not abuse its discretion because the 132-month sentence is reasonable.

_____