# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4485

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Leon Johnson, also known as | * | |
| James Johnson, also known as | * | |
| Terrell Hill, also known as | * | |
| Williams McHee, also known as | * | |
| William C. McGhee, also known as | * | |
| William C. McGee, also known as | * | |
| William McGhee, also known as | * | |
| Terrell Eiill, also known as | * | |
| William T. McGhee, also known as | * | |
| Tyrone Hill, also known as | * | |
| Ricky Talman, also known as | * | |
| Ricky Tolbert, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 18, 2006
Filed: September 8, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Leon Johnson of three federal firearms violations, as well as two federal narcotics violations. The district court[1] sentenced Johnson to life imprisonment. Johnson appeals, challenging the sufficiency of the evidence; the district court's denial of his motion to sever the narcotics counts from the firearms counts; and its denial of his dismissal motion for alleged grand jury error and prosecutorial misconduct. Johnson also contends that the government provided insufficient notice, pursuant to 21 U.S.C. § 851(a)(1), of its intention to seek a sentence of life imprisonment based upon Johnson's prior convictions. We affirm.

I. *Background*

A week prior to April 6, 2004, Johnson sold Troy Perkins a $50 rock of cocaine base in Cedar Rapids, Iowa. On April 6, 2004, Perkins, a drug informant, called Johnson and arranged to purchase 14 grams of cocaine base. During subsequent phone calls, Perkins provided Johnson with directions to a location for the narcotics transaction. Perkins met Johnson and Charles Greene behind a grocery store in Coralville, Iowa. Law enforcement observed Greene in the driver's seat and watched as Perkins approached the passenger side of the vehicle, where Johnson was seated. Perkins then gave Johnson $500 for the cocaine base. Greene and Johnson left, driving in the direction of Cedar Rapids.

After the transaction, Perkins gave the cocaine base that he received from Johnson to the narcotics officer observing the sale. When measured, the cocaine base that Johnson sold was only three grams, not the expected five grams. As planned, Officer Jerry Blomgren of the Iowa City Police Department made a traffic stop of Johnson and Greene. Johnson and Greene told Officer Blomgren that they were headed to Cedar Rapids. During the stop, Officer Blomgren seized $545 from Johnson. Later, Perkins called Johnson to complain that he had only received three

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

grams of cocaine. Johnson told Perkins that the police seized the money and that he was going to return to Iowa City with his girlfriend to claim the money.

Johnson's weapons charges arise from an unrelated incident approximately three weeks later in Marion, Iowa. Police received a report of an assault at an apartment complex. Stevie Williams told police that he and Tyrone Redding had gone to an apartment to meet a woman named "Christina," later identified as Christina Boswell—Johnson's girlfriend. When the men arrived at the apartment, Johnson approached them wielding two handguns. Williams described one of the guns as chrome and the other as black. After Johnson threatened to shoot Williams and Redding, they quickly departed. Williams returned home and notified the police.

Police arrived at the apartment and spoke with Johnson and Boswell. The officers obtained a search warrant and found the two handguns described by Williams, one of which had an obliterated serial number. Police also found an additional handgun and a small bag of marijuana. The marijuana apparently belonged to Boswell.

A few months later, Johnson again ran afoul of the law. Cedar Rapids police officers responded to a report of several individuals gambling in a parking lot. Johnson was among them. When the officers approached, the men scattered. Johnson discarded a roll of cash as he walked away. Officer Bryan Furman apprehended Johnson, handcuffed him, searched him for weapons, and placed him in the backseat of a police car. Boswell then approached the officers, telling them that Johnson had her cell phone and that she wanted to get it from him. The officers acquiesced. With his hands cuffed behind his back and seated in the back of the police car, Johnson removed the cell phone from his pocket. As Johnson tried to hand the cell phone to Boswell, he dropped a bag of cocaine base on the ground. The bag landed slightly underneath the police car on the ground, where the officers discovered it. Johnson apparently tried to hand the bag to Boswell with the cell phone. The bag contained

approximately 5.5 grams of cocaine base, divided into nine individually bagged rocks and one larger rock. The narcotics were found within 1,000 feet of McKinley Middle School, a protected area.

The third superseding indictment charged Johnson with the following counts: (1) possession with attempt to distribute and aiding and abetting the distribution of cocaine base after having been convicted of one or more felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, 851; (2) possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); (3) possession of a firearm while an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2); (4) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k), 924(a)(2); and (5) possession with intent to distribute or attempting to distribute 5 or more grams of cocaine base within 1,000 feet of a protected location after having been convicted of one or more felony drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, 851, 860.

Johnson filed a motion to dismiss Count I of the second superseding indictment, alleging that the government knowingly presented false testimony to the grand jury. Specifically, Johnson took exception to the testimony of Cedar Rapids Police Detective George Aboud. Detective Aboud was not present when Johnson was arrested for the gambling offense, but Aboud testified before the grand jury about the events based upon police reports that he reviewed. Aboud testified that Johnson was removed from the back of the police car before he dropped the bag of cocaine base. In contrast, Officers Furman and Campsure, who were present, reported that Johnson was not taken out of the squad car but rather remained in the car as he attempted to hand the cell phone to Boswell. Johnson contends that because the bag landed slightly underneath the car, it was physically impossible for him to have been the source of the bag. He further contends that the grand jury would not have indicted him if it had heard the testimony of officers Furman and Campsure.

-4-

Before the district court ruled on Johnson's motion to dismiss, a different grand jury heard the corrected testimony of Officer Aboud, who had subsequently spoken with Officer Furman about the incident before testifying. Aboud testified that Johnson remained seated in the back of the squad car when he dropped the bag. The grand jury found probable cause and returned the third superseding indictment, which remained substantially the same as the second superseding indictment. The district court later denied Johnson's motion to dismiss Count V. A jury convicted the defendant on all counts. After denying Johnson's motion for a new trial, the district court sentenced him to life imprisonment.

Johnson raises the following arguments on appeal: (1) the district court erred by denying his motion for a new trial because insufficient evidence supported his convictions on all counts; (2) the district court erred by not severing the firearms and narcotics counts; (3) the district court erred by failing to dismiss Count V due to grand jury error and alleged prosecutorial misconduct; and (4) the government failed to provide sufficient notice of its intent to seek a sentence of life imprisonment due to Johnson's prior convictions. We affirm.

## II. *Discussion*
### A. *Motion for New Trial—Sufficiency of the Evidence*

Johnson seeks a new trial on each count. The decision to grant or deny a motion for a new trial rests within the sound discretion of the district court, and we will reverse only for an abuse of that discretion. *See United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).

### 1. *Count I (Venue)*

Johnson argues that there was insufficient evidence that he committed a crime charged in Count I in the Northern District of Iowa. Specifically, Johnson contends that his distribution of cocaine base was in the Southern District of Iowa and that the

government presented no evidence that his possession of cocaine base began in the Northern District of Iowa. We disagree.

"'Proper venue is required by Article III, § 2 of the United States Constitution and by the Sixth Amendment, as well as Rule 18 of the Federal Rules of Criminal Procedure.'" *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006) (quoting *United States v. Romero*, 150 F.3d 821, 824 (8th Cir.1998)). "A violation of federal law may be prosecuted 'in any district in which such offense was begun, continued, or completed.'" *Id.* (quoting 18 U.S.C. § 3237(a)). Therefore, a defendant can be charged where he had possession of the narcotics, even if he intended to distribute the narcotics somewhere else. *United States v. Granados*, 117 F.3d 1089, 1091 (8th Cir. 1997). "The government bears the burden of proving venue by a preponderance of the evidence." *United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995).

The government established that Johnson, while in the Northern District of Iowa, spoke with informant Perkins to arrange a narcotics transaction. In addition, Johnson lived in the Cedar Rapids area and sold cocaine base to Perkins in Cedar Rapids. Therefore, the government presented sufficient evidence to prove by a preponderance of the evidence that venue was proper in the Northern District of Iowa, and the district court did not abuse its discretion by denying Johnson's motion for a new trial on the basis of improper venue.

### 2. *Counts II, III, and IV (Firearms Counts)*

Johnson challenges the sufficiency of the evidence regarding his possession of a firearm—a necessary element of Counts II, III, and IV. Specifically, Johnson attacks the credibility of Stevie Williams, contending that Williams was intoxicated and distressed on the night he allegedly saw Johnson with two firearms. Johnson claims Williams provided conflicting accounts of what took place that night. Johnson thus challenges the weight accorded Williams's testimony, arguing that the government offered no corroborating evidence.

New trial grants based upon objections to the weight of the evidence are not favored. *Dodd*, 391 F.3d at 934. As we have explained:

> In considering the motion for a new trial alleging the verdict is contrary to the weight of the evidence, the "court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Lacey*, 219 F.3d 779, 783–84 (8th Cir.2000). "*Motions for new trials based on the weight of the evidence are generally disfavored.*" *Campos*, 306 F.3d at 579. The district court's authority to grant a new trial should be exercised "sparingly and with caution." *Lincoln*, 630 F.2d at 1319.

*United States v. Ramirez*, 362 F.3d 521, 525 (8th Cir. 2004) (emphasis added).

We hold that the district court did not abuse its discretion in denying a new trial. Williams testified as follows: He and a friend went to Boswell's apartment. Boswell answered the door, acted strangely, and closed the door. Johnson then came to the door and brandished two guns at the men and threatened to shoot them. The men retreated. Williams returned home, called the police, and provided officers with a description of Johnson that matched Johnson's attire when police arrived at Boswell's apartment. In addition, Williams described the guns used by Johnson, and this description matched two of the firearms recovered from the apartment. Denying Johnson's motion for a new trial, the district court cited Williams's testimony, implicitly finding such testimony credible. We discern no persuasive reason for rejecting the district court's credibility assessment. *United States v. Rodriguez*, 414 F.3d 837, 845 (8th Cir. 2005).

The government presented other evidence tying Johnson to the apartment and the firearms found therein. First, police found Johnson in the apartment with his girlfriend, the lessee of the apartment. Second, Johnson used the apartment as a

mailing address for his cell phone bill. Third, police found the third firearm, the one not used in the incident with Williams, in plain view inside a plastic bag. There was sufficient evidence that Johnson possessed the firearms recovered from Boswell's apartment. Therefore, we hold that the district court did not abuse its discretion by denying Johnson's motion for a new trial on Counts II, III, and IV.

### 3. *Count V (Possession or Distribution of Narcotics Within 1,000 Feet of a Protected Area)*

Johnson argues that insufficient evidence supported his conviction for Count V. He asserts that it is "unreasonable to believe" the facts as the government presented them. Although the government's case is no forensic slam dunk, we find no abuse of discretion in the district court's decision to deny the motion for new trial.

After Johnson's Cedar Rapids gambling arrest, police found a bag of cocaine outside the squad car in which he was sitting. The officers testified that the cocaine fell to the ground after Johnson attempted to retrieve a cell phone from his pocket for Boswell, who had asked the officers for permission to get it from Johnson. While seated in the back of the police car with his hands cuffed behind his back, Johnson removed the cell phone from his pocket. As Johnson tried to hand the cell phone to Boswell, he dropped a bag of cocaine base on the ground. The officers saw the bag slightly underneath the police car on the ground. Johnson apparently tried to hand the bag to Boswell with the cell phone.

Johnson contends that it is unreasonable to believe that he would discard a wad of cash but would fail to discard a bag of cocaine base. He notes that the bag of cocaine base was not discovered by Officer Furman's initial pat-down search of his person. Johnson contends that it was physically implausible for him, while seated and handcuffed in the police car, to somehow manage to drop the bag slightly under the car. Johnson points to the inconsistent accounts from the officers on the scene: While

Officer Furman testified to seeing Johnson drop the bag, but Officer Campsure testified he pointed the bag out to Officer Furman, who did not see the bag drop.

The jury was in the best position to evaluate the evidence. A jury could reasonably conclude, based upon the evidence, that Johnson failed to discard the bag of cocaine base because he believed that he would not be arrested; in the excitement he simply neglected to discard the bag; or mistakenly believed that he had discarded it. The government presented evidence that a pat-down search is merely a "quick cursory check" for weapons that could be used to harm officers on the scene or later in the police car. A jury, therefore, could reasonably conclude that Officer Furman missed the bag of narcotics when he performed the pat-down search. Finally, the government presented evidence that the bag was discovered directly below the bottom edge of the car, not underneath the car. A jury could reasonably conclude that the bag somehow fell slightly under the outer edge of the car. Based upon our review of this record, we find no abuse of discretion in denying Johnson's motion for a new trial.

### B. *Severance*

Johnson argues that the district court should have severed the narcotics and weapons counts pursuant to Federal Rule of Criminal Procedure 8(a). This issue presents a close question. Given the close temporal proximity of the narcotics activities and the possession of the firearms, we believe that joinder was proper. Rule 8(a) applies to joinder of offenses and provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The rule is broadly construed in favor of joinder to promote the efficient administration of justice. *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002);

*United States v. Little Dog*, 398 F.3d 1032, 1037 (8th Cir. 2005). We review de novo the decision to join counts pursuant to Rule 8 of the Federal Rules of Criminal Procedure. *United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999).

We made clear in *Boyd* that there is no categorical rule or presumption that firearms and narcotics are subject to joinder. *Id*. at 982. Indeed, we affirmed the joinder in *Boyd* based primarily upon the fact that "both times Boyd was found in constructive possession of weapons there were controlled substances in the immediate vicinity[.]" *Id*. Due to the immediate temporal and logical connection between the firearms and the narcotics, we held that "[i]t is therefore reasonable to assume that the firearms could have been used as a vital part of a plan to possess and distribute drugs." *Id*.(internal quotations, brackets, and citation omitted).

Johnson's drug trafficking activity took place on the streets, but his firearms possession occurred in his girlfriend's apartment. When the police searched the apartment, no cocaine base was found. Police uncovered a user quantity of marijuana, but it belonged to Boswell. In denying Johnson's objection to joinder, the district court noted the common thread of Boswell's involvement or presence in virtually all of Johnson's offenses. The court found that Johnson's firearms possession could be linked to his need to protect his ongoing distribution of illegal drugs. The firearms offense occurred between two narcotics offenses within a five-month period. While the connection between Johnson's drug trafficking and his weapons offenses is not particularly strong, the charges are connected temporally and logically, and the district court found them to be part of a common scheme or plan. The district court properly instructed the jury to consider the offenses separately, and nothing in the record shows that the jury could not or did not segregate the evidence needed to establish each offense. Thus, we find the district court's denial of Johnson's severance motion was not erroneous.

-10-

## C. *Grand Jury*

Johnson argues that the district court should have dismissed Count V due to alleged perjury before the grand jury, as well as potential prosecutorial misconduct. This argument lacks merit for several reasons. First, Detective Aboud's inaccurate recitation of the facts was reasonable given the police reports that he read. Second, the government presented the corrected version of the evidence to a second grand jury, which also indicted Johnson. Third, the petit jury ultimately found Johnson guilty of Count V, rendering any grand jury error harmless and resulting in no prejudice to Johnson. *See United States v. Ruiz*, 446 F.3d 762, 769 (8th Cir. 2006) ("The petit jury's ultimate finding of guilt beyond a reasonable doubt renders the alleged grand jury error, if any, harmless."); *United States v. Sanders*, 341 F.3d 809, 818 (8th Cir. 2003) ("Even if we were to assume there was prosecutorial misconduct during the grand jury proceedings, the petit jury's guilty verdict rendered those errors harmless."); *see also United States v. Exson*, 328 F.3d 456, 459 (8th Cir. 2003) ("Dismissal due to errors in grand jury proceedings is appropriate only if the defendant shows actual prejudice.").

## D. *Notice under § 851*

Johnson argues that the government provided insufficient notice of its intent to seek a life sentence based upon his prior convictions. Specifically, Johnson argues that the government did not "file a document with the sole, specific purpose of providing [him] with notice under 21 U.S.C. § 851(a)(1) that the [g]overment intended to seek an enhanced sentence of life in prison against him based upon his prior convictions." The government counters that the indictment itself provided Johnson with notice of the government's intent to rely on his prior convictions.

Section 851(a)(1) of 21 U.S.C. provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior

convictions, unless before trial, . . . the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

We have noted that the purpose of notice under § 851 is to comply with the constitutional requirements of due process. *United States v. Curiale*, 390 F.3d 1075, 1076 (8th Cir. 2004). "In applying the statute's requirements, courts are careful not to elevate form over substance." *Id.* at 1077. In applying this principle, we have placed the greatest weight on whether the defendant enjoyed "full knowledge of the consequences" of his prior convictions when making strategic decisions in the course of his defense, including whether to challenge the fact of prior conviction or whether to plead guilty or to go to trial. *See id.*; *United States v. Timley*, 443 F.3d 615, 625–27 (8th Cir. 2006).

Johnson correctly asserts that the general procedure is for the government to file a separate notice pursuant to § 851. *E.g., Timley*, 443 F.3d at 621, 626. However, Johnson's argument for reversal fails because the government's reliance on prior convictions was apparent from the face of the indictment, which listed the prior convictions on which the government relied and expressly cited to § 851. *See id.* at 625–27. Contrary to Johnson's argument, § 851 does not require the government to provide notice of its intent to enhance a defendant's sentence. Instead, the statute requires notice that "stat[es] in writing the previous convictions to be relied upon." The indictments filed against Johnson listed the prior convictions on which the government intended to rely, cited § 851, and cited the relevant sections providing for an enhanced sentence on the basis of prior convictions.

Furthermore, as in *Curiale* and *Timley*, the plea negotiations prior to trial provided the defendant with explicit notice of the government's intent at trial to seek a life sentence. The initial indictment charged Johnson with possession with intent

to distribute or attempted distribution of cocaine base after having been convicted of one or more felony drug offenses following his arrest for gambling. However, the indictment did not include an allegation that the offense took place within 1,000 feet of a protected location, which would carry a mandatory sentence of life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A), 851.

The government intended to seek a superseding indictment including the "protected location" charge. Prior to the return of the superseding indictment, the government sent Johnson two letters providing him with notice of the possibility of a mandatory life sentence if convicted of the anticipated superseding indictment. During a meeting with Johnson, the Assistant United States Attorney offered Johnson the opportunity to plead guilty, warning him that he would face a mandatory sentence of life imprisonment if convicted of the anticipated superseding indictment. Approximately one month later, the grand jury returned the first superseding indictment, which added the "protected location" allegation and specifically referenced §§ 851, 860. The grand jury returned a second superseding indictment containing the same charge. The government then filed a motion in limine, seeking to bar the defendant from commenting on the fact that he faces a mandatory life sentence if convicted. One week later, the government filed a trial memorandum, noting that Johnson's two prior narcotics felonies subject him to enhanced penalties pursuant to §§ 851 and 860. The grand jury then returned a third superseding indictment with no material changes.

On this record, we believe that the government provided Johnson with adequate notice that he faced a mandatory life sentence if convicted of narcotics distribution near a protected location after having been convicted of prior narcotics felonies. A contrary ruling would place form over substance, which we decline to do.

### III. *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court.

_____