# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2835

_____

United States of America

*Plaintiff - Appellee*

v.

Ricardo Limon-Urenda

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: May 15, 2015
Filed: July 22, 2015
[Unpublished]

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Ricardo Limon-Urenda was convicted of conspiracy to distribute methamphetamine in the Northern District of Iowa. On appeal, Limon-Urenda argues

that the district court[1] erred in denying his motion for judgment of acquittal because there was insufficient evidence to support venue in the Northern District of Iowa. We affirm.

## I. *Background*

Limon-Urenda was charged in a one-count indictment with conspiracy to distribute 500 grams or more of a methamphetamine mixture containing 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, in the Northern District of Iowa "[f]rom about 2013 through June 2013."

The government produced the following evidence at trial. On June 20, 2013, Agent Ben Gill of the Iowa Division of Narcotics Enforcement arranged the purchase of two ounces of methamphetamine from Jovany Bautista using a confidential informant in Sioux City, Iowa. Agent Gill expected the methamphetamine transaction to occur at a Conoco gas station just across the river in South Sioux City, Nebraska.

Prior to the actual drug transaction, other agents conducted surveillance of Bautista at his residence in South Sioux City, Nebraska. Agents observed Bautista associate with Limon-Urenda and Javier Castilla-Gallardo. At the time of the scheduled drug transaction, agents observed Bautista, Limon-Urenda, and Castilla-Gallardo drive from Bautista's residence to the Conoco gas station. Agents stopped the vehicle occupied by the three men. Following a search, they seized approximately two ounces of crystal methamphetamine found inside a white work glove. Agents subsequently seized matching white work gloves from Limon-Urenda's vehicle located at Bautista's residence. Agents additionally seized methamphetamine from Limon-Urenda's residence.

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

Bautista testified that he distributed methamphetamine to and purchased methamphetamine from Limon-Urenda from 2012 through June 2013. Bautista estimated that he distributed one to two pounds of methamphetamine to Limon-Urenda and that Limon-Urenda distributed one to two pounds of methamphetamine to Bautista. According to Bautista, Limon-Urenda accompanied him in 2012 and 2013 on a number of trips from South Sioux City, Nebraska, to Sioux City, Iowa, during which they delivered methamphetamine to customers.

Bautista further described his and Castilla-Gallardo's involvement in the procurement of two ounces of methamphetamine from Limon-Urenda for the delivery of methamphetamine on June 20, 2013. The prospective customer contacted Bautista by phone seeking to acquire two ounces of methamphetamine. Bautista then asked Castilla-Gallardo to contact Limon-Urenda to see if he could supply the two ounces of methamphetamine. Bautista and the prospective customer arranged to meet at the Conoco gas station for delivery of the methamphetamine in South Sioux City, Nebraska, just across the bridge from Sioux City, Iowa. Bautista knew that the prospective customer was coming from Sioux City, Iowa, across the river to get the methamphetamine in South Sioux City, Nebraska. Through Castilla-Gallardo, Bautista arranged for Limon-Urenda to provide the two ounces of methamphetamine for this transaction. Bautista, Castilla-Gallardo, and Limon-Urenda all met at Bautista's residence in South Sioux City, Nebraska, and used methamphetamine. Limon-Urenda supplied the methamphetamine for the prearranged transaction. Then, Bautista, Castilla-Gallardo, and Limon-Urenda traveled in Bautista's vehicle to distribute the two ounces of methamphetamine to the prospective customer. When the men arrived at the Conoco gas station, agents arrested all of them and seized the methamphetamine.

Castilla-Gallardo testified that he had seen Limon-Urenda and Bautista supply each other with methamphetamine in the several months preceding their arrests. According to Castilla-Gallardo, he initially purchased half grams of

methamphetamine for personal use from Limon-Urenda in late 2012 and early 2013. Then, closer to June 2013, Castilla-Gallardo started purchasing larger quantities of methamphetamine for resale to support his habit; he estimated purchasing approximately three or four eight-balls[2] of methamphetamine from Limon-Urenda during this time.

Castilla-Gallardo additionally testified that, after Christmas 2012, he accompanied Limon-Urenda on at least two trips from South Sioux City, Nebraska, to Sioux City, Iowa, during which Limon-Urenda delivered methamphetamine to a customer.

Castilla-Gallardo also confirmed his assistance in the procurement of two ounces of methamphetamine from Limon-Urenda, at Bautista's request, for the delivery of the methamphetamine on June 20, 2013. Castilla-Gallardo contacted Limon-Urenda and helped arrange Limon-Urenda's delivery of two ounces of methamphetamine to Bautista for purposes of the prearranged transaction. Castilla-Gallardo also confirmed his, Bautista's, and Limon-Urenda's use of methamphetamine at Bautista's residence before the prearranged drug transaction. Castilla-Gallardo confirmed that all three rode in the vehicle in the attempt to deliver the methamphetamine at the Conoco gas station in South Sioux City, Nebraska.

During a post-*Miranda* interview, Limon-Urenda admitted knowing that about one and one-half ounces of crystal methamphetamine was found in the vehicle when he, Bautista, and Castilla-Gallardo were arrested on June 20, 2013. Limon-Urenda also admitted that earlier that day he had heard Bautista talking on the phone with someone about "one and one-half ounces." He further admitted that he had

---

[2]"An 'eight-ball' refers to one-eighth of an ounce, or approximately 3.5 grams." *United States v. Slagg*, 651 F.3d 832, 841 n.3 (8th Cir. 2011) (quoting *United States v. Garcia*, 562 F.3d 947, 950 n.2 (8th Cir. 2009)).

accompanied Bautista on three or four occasions when Bautista delivered methamphetamine from South Sioux City, Nebraska, to customers at a motel in Sioux City, Iowa.

On March 6, 2014, the jury returned a verdict in which it found Limon-Urenda guilty of the charged offense. Limon-Urenda moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Limon-Urenda argued for a judgment of acquittal on the ground that there was insufficient evidence introduced at trial to support his conviction on the charged offense. First, he argued that "there was a lack of sufficient evidence in which to prove that any part of this alleged conspiracy took place in the State of Iowa." Second, he argued that "regardless of credibility issues, there was an overall lack of evidence presented by the Government to prove each of the elements of the offense charged." The district court denied Limon-Urenda's motion.

## II. *Discussion*

On appeal, Limon-Urenda "argues that there was insufficient evidence that he committed [conspiracy to distribute methamphetamine] in the Northern District of Iowa. Specifically, [he] contends that . . . the government presented no evidence that [the offense was] in the Northern District of Iowa." *United States v. Johnson*, 462 F.3d 815, 819 (8th Cir. 2006).

> "Proper venue is required by Article III, § 2 of the United States Constitution and by the Sixth Amendment, as well as Rule 18 of the Federal Rules of Criminal Procedure." *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006) (quotation omitted). A federal crime may be prosecuted in any district in which such offense began, continued, or was completed. [*United States v.*] *Hull*, 419 F.3d [762,] 768 [(8th Cir. 2005)]. Specifically, "[i]n a conspiracy case, venue is proper 'in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there.'" *Id.* (quoting *United States v.*

*Fahnbulleh*, 748 F.2d 473, 477 (8th Cir. 1984)). "Where the relevant facts are disputed, venue is a question of fact for the jury to decide." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010).

*United States v. Banks*, 706 F.3d 901, 904–05 (8th Cir. 2013) (fourth alteration in original).

"'Furthermore, although separate proof of an overt act is not a necessary element of a drug conspiracy under 21 U.S.C. § 846, venue is proper in a conspiracy case in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators.'" *Morales*, 445 F.3d at 1084 (quoting *United States v. Romero*, 150 F.3d 821, 824 (8th Cir. 1998)). "'The government bears the burden of proving venue by a preponderance of the evidence.'" *Johnson*, 462 F.3d at 819 (quoting *United States v. Bascope–Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995)).

Based on the following evidence, a jury could reasonably infer that Limon-Urenda and his two coconspirators engaged in overt acts in furtherance of their conspiracy to distribute methamphetamine in Sioux City, Iowa, making venue proper in the Northern District of Iowa. *See Morales*, 445 F.3d at 1084. First, Bautista testified to traveling with Limon-Urenda on several occasions in 2012 and 2013 from South Sioux City, Nebraska, to Sioux City, Iowa, to deliver methamphetamine to customers. Second, Castilla-Gallardo testified to accompanying Limon-Urenda from South Sioux City, Nebraska, to Sioux City, Iowa, after Christmas 2012 and into 2013, when Limon-Urenda delivered methamphetamine to customers.[3] Third, Limon-

---

[3]Limon-Urenda argues that Castilla-Gallardo testified at trial inconsistent with his deposition, and, therefore, conflicting testimony exists about whether Limon-Urenda traveled to Iowa for drug deals. But Castilla-Gallardo's credibility was a determination for the jury to make. *United States v. Jefferson*, 652 F.3d 927, 930 (8th Cir. 2011) (stating that witness testimony need not be corroborated and that a jury's credibility determinations are "'virtually unreviewable on appeal'" (quotation omitted)).

Urenda admitted in a post-*Miranda* statement to law enforcement that he had accompanied Bautista on three or four occasions to deliver methamphetamine to customers in Sioux City, Iowa. Fourth, on June 20, 2013, Limon-Urenda supplied two ounces of methamphetamine to Bautista for the purpose of their delivery of the methamphetamine to a prospective customer coming from Sioux City, Iowa, to South Sioux City, Nebraska.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____