# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1275

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeals From the United States |
| Michael J. Timley, Lacey M. Gimlin, | * | District Court for the |
| | * | Western District of Missouri. |
| | * | |
| Appellees. | * | |

_____

No. 05-1292

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee. | * | |
| | * | |
| v. | * | |
| | * | |
| Michael J. Timley, | * | |
| | * | |
| Appellant. | * | |

_____

No. 05-1819

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant. | * | |
| | * | |

v.                                                    *
                                                      *
Michael J. Timley,                                    *
                                                      *
            Appellee.                                 *

                                    _____

                        Submitted:  January 9, 2006
                        Filed:    April 3, 3006
                                    _____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.
                                    _____

HEANEY, Circuit Judge.

       Michael J. Timley pled guilty to one count of conspiracy to distribute marijuana
and one related forfeiture count.  He reserved the right to appeal the denial of his
motion to suppress evidence seized during a search of his residence.  He was
sentenced to 92 months of imprisonment, to be followed by four years of supervised
release.  As to the forfeiture count, the district court refused to order the forfeiture of
$130,097 in cash that was seized at Timley's residence, finding that the Rooker-
Feldman[1] doctrine prohibited such action because of a state court ruling denying a
motion to transfer the money to federal jurisdiction for the institution of federal
forfeiture proceedings.  Timley timely appeals, arguing:  (1) that the district court
erred in denying his motion to suppress and his motion for a Franks[2] hearing related
to that motion; (2) that the government's failure to file a notice of its intent to seek an
enhanced sentence due to prior convictions pursuant to 21 U.S.C. § 851 limited
Timley's maximum sentence to 60 months of imprisonment, rather than the 92 months

_____

       [1]Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v.
Feldman, 460 U.S. 462 (1983).

       [2]Franks v. Delaware, 438 U.S. 154 (1978).

imposed; and (3) that the district court erred in refusing to grant a hearing on Timley's motion for return of his property. The government has cross-appealed, arguing that the district court erred in refusing to forfeit Timley's $130,097, and in failing to include language ordering the forfeiture in Timley's judgment and commitment papers. We affirm in all respects related to Timley's conviction and sentence, but reverse the district court on the forfeiture matter.

## BACKGROUND

In December 2002, Detective Gary Gibson, a neighbor of Timley's, performed a background check on Timley. This revealed that Timley was on probation for a state conviction of distributing and manufacturing a controlled substance and had a prior federal conviction for conspiracy to distribute crack. Gibson passed this information on to Terrence Carter, a detective in the Kansas City, Missouri Police Department's drug enforcement unit. Gibson then continued unofficial surveillance of Timley's house. On March 29, 2003, Gibson saw a blue vehicle back into Timley's driveway. The driver partially opened the garage door, opened the trunk of the car, and unloaded two large black trash bags from the trunk of the car. The driver placed the trash bags in the garage, closed the garage door, and quickly left the driveway.

On April 9, 2003, Gibson, Carter, and a third detective executed a trash pull at Timley's residence. Upon sorting through Timley's trash, they found eleven bags containing marijuana residue and a large black trash bag similar to the one Gibson saw unloaded at Timley's house on March 29, 2003, which contained green stems and marijuana residue. On April 16, 2003, the detectives conducted another trash pull. This time they observed Timley actually bring the bags to the curb for pick up. In the trash, officers again found what was described as a large amount[3] of a substance that appeared to be, and field tested consistent with, marijuana.

---

[3]Timley disputes that officers found a large amount of marijuana because suppression hearing testimony established that it was about an ounce.

Carter then sought a warrant to search Timley's residence. On April 17, 2003, he brought his application to a Clay County circuit court judge. In his application, Carter stated that he had received information that Timley had prior drug convictions, and based on the information outlined above, there was probable cause to search for: marijuana; weapons; currency; any equipment used to further drug transactions or deter law enforcement effectiveness; documents related to drug trafficking; photographs, videotapes, and the like, particularly ones showing coconspirators, assets, or controlled substances; and any indicia of occupancy of the house, including envelopes, bills, and keys. The judge issued the warrant as requested without making any alterations to the form. Carter and his team executed the warrant that same day, seizing, among other things, roughly 100 pounds of marijuana, $130,097 in cash, and numerous documents and photographs.

Timley was then charged by complaint with conspiring to distribute marijuana. He was subsequently indicted by a grand jury, which charged him with conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841 and 846, and charging that the $130,097 in cash seized from his residence was proceeds of the conspiracy and thus subject to criminal forfeiture under 21 U.S.C. § 853. Pursuant to Missouri law,[4] the state sought to transfer the $130,097 its officers had seized to federal custody to accommodate the forfeiture. Timley, through his attorney, Patrick Peters, objected to the transfer. The Clay County circuit court denied the state's motion to transfer, finding that the notice provisions of Missouri's transfer statute were unconstitutional because they did not ensure that interested parties would receive notice of the potential forfeiture, and that, in any event, the state failed to follow even those provisions. The court ordered the money to be returned to Patrick Peters on behalf of his client, Timley.

---

[4]Missouri law requires that a state or local law enforcement agency first receive approval from both the state prosecuting attorney and a circuit judge in the county in which the property was seized before transferring property to a federal agency. Mo. Rev. Stat. § 513.647(1).

Timley then filed a motion to suppress evidence seized during the April 17, 2003 search of his residence, which the district court referred to a magistrate. The magistrate recommended denying the motion, and the district court accepted that recommendation. Subsequently, Timley entered into a plea agreement, by which he agreed to plead guilty to the offense of conspiracy to distribute marijuana (no specific quantity). The government filed a superseding information charging that offense, as well as a second count charging criminal forfeiture of the seized $130,097. The plea agreement noted that while the conspiracy charge had a five-year maximum sentence, the defendant's prior drug convictions raised the maximum sentence to ten years. The agreement also included the following language:

> Regarding the United States currency described in Count Two of the Information, the parties agree that the $130,097.00 recovered from the defendant's residence on April 17, 2003, are proceeds of the conspiracy to distribute narcotics and forfeitable to the United States government. The defendant agrees to take all steps necessary for this $130,097.00 to be forfeited to the United States government. Specifically, the defendant agrees to obtain the $130,097.00 from the Kansas City, Missouri Police Department pursuant to the court order from the Circuit Court of Clay County, Missouri, and immediately give the $130,097.00 to a representative of the United States government, so the currency may be forfeited. The defendant acknowledges that the United States has instituted criminal forfeiture proceedings against this $130,097.00, and the defendant agrees not to contest this forfeiture proceeding[].

(Gov't App. at 40.) Timley, Peters, and an Assistant United States Attorney signed the plea agreement, and it was filed on June 18, 2004. Timley subsequently pled guilty on June 22, 2004.

On August 16, 2004, the government filed a motion for a preliminary order of forfeiture. Peters objected. According to Peters, he had a fee agreement with Timley for his actions in state court attempting to recover Timley's $130,097, and this agreement entitled him to fifty percent of the money recovered from the state, or an hourly rate of $300 per hour, whichever was greater. Peters noted that he was

successful in state court, as the motion to transfer the $130,097 to federal jurisdiction failed.  Peters claimed that on June 25, 2003, he filed an attorney's lien on the $130,097 for payment of his fees, and he thus had a third-party interest that precluded the government from effecting forfeiture of the money.

Prior to sentencing, Timley objected to any increase in the statutory maximum sentence that was based on prior convictions.  Although the government had, as required by 21 U.S.C. § 851(a)(1), filed a notice of its intent to rely on his prior convictions to increase the maximum penalty when it filed the indictment, it failed to refile the § 851 notice when it filed its superseding information.  The district court denied Timley's objection and imposed a sentence of 92 months of imprisonment, to be followed by four years of supervised release.

At the sentencing hearing, the court also considered whether the government was entitled to criminal forfeiture of the $130,097.  After reviewing the state court order denying transfer of the money to the United States Attorney, the court found that it lacked jurisdiction to forfeit the money.  The court reasoned that "[f]or this court to have subject matter jurisdiction over the U.S. currency for forfeiture, this court would have to find Judge Harman's [state court] opinion and order to be in error."  (Gov't App. at 62.)  The court determined that such a review was prohibited by the <u>Rooker-Feldman</u> doctrine's strictures on federal courts' power to review state court actions in related proceedings.  Accordingly, the court refused to order the money forfeited. The court further held that the money was not forfeitable as substitute property.  Both parties appeal.

## ANALYSIS

Timley asserts that constitutional and procedural infirmities in the search warrant rendered the April 17, 2003 search invalid, and argues all evidence seized must be suppressed.  He further contends that his motion for return of property was improperly denied, and that his sentence exceeded the statutory maximum for his

crime because the government failed to file a notice of its intent to increase his sentence based on prior convictions. In its cross-appeal, the government asserts that the district court erred in both failing to state in Timley's judgment and commitment papers that he shall forfeit the $130,097 (or substitute assets) and in failing to order the money forfeited.

## I.    THE LEGALITY OF THE APRIL 16, 2003 SEARCH

Timley's search-related arguments are essentially three-fold: (1) that the search was invalid because it was based on a general warrant, which the Kansas City police department mechanistically requests and receives; (2) that he was improperly denied a Franks hearing on the issue of falsities in the warrant application; and (3) that the warrant was issued in violation of Missouri's statutory filing requirements.

We first address Timley's claim that the evidence seized must be suppressed because it was based on a warrant that was unconstitutionally broad. "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except for one 'particularly describing the place to be searched and the persons or things to be seized.'" Maryland v. Garrison, 480 U.S. 79, 84 (1987) (quoting U.S. Const. amend. IV). A warrant that fails in this particularity requirement is invalid, Groh v. Ramirez, 540 U.S. 551, 557 (2004), and evidence seized for no reason other than reliance on invalid portions of a warrant must be suppressed, United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir. 1983) (en banc). However, where the warrant is invalid only in part, the warrant is "severable," and items seized pursuant to valid portions of the warrant need not be suppressed. Id.; see also United States v. Krasaway, 881 F.2d 550, 553 (8th Cir. 1989) (holding that although portions of a warrant were invalid because they did not describe items to be seized with sufficient particularity, the defendant's motion to suppress was properly denied because the actual items seized fell within the valid portions of the warrant).

Timley argues that his warrant was unconstitutional because it directed the seizure of items for which there was no probable cause to believe were connected to any of his purported criminal activity, and because the warrant was insufficiently specific in directing the items to be seized.[5] Timley posits that the warrant must be overbroad because it resulted in the seizure of over 500 items, most of which were various documents and bills. A warrant's validity, however, is not judged solely by how many items were seized pursuant to it. Rather, the question is whether there was probable cause to seize the items as evidence of criminal activity, and whether the warrant sufficiently directed officers which items to seize so as to limit their discretion.

For most of the categories of items to be seized, we find the warrant valid. The first three categories of items to be seized were marijuana, weapons, and currency. Given that the warrant was based on probable cause to believe Timley was dealing marijuana, directing the seizure of these items was entirely appropriate. Moreover, equipment used to further drug transactions, documents relating to drug transactions, equipment used to deter law enforcement effectiveness, and photographs of coconspirators or objects of the conspiracy are also reasonable, and the warrant was sufficiently particular as to these items. The only questionable item is the warrant's authority to search for matters generally related to indicia of occupancy. We acknowledge that indicia of occupancy is material in cases where the allegation is that the defendant stores the drugs at his or her residence. On the other hand, a warrant authorizing officers to seize anything related to indicia of occupancy is quite broad. We need not decide this matter, though, for it is inconsequential to the result: the

---

[5]In his brief, Timley emphatically stresses that the warrant is a general warrant because, by his review, the categories of items listed to be seized in his case are listed in hundreds of narcotics warrants in Kansas City. This obscures the issue because one would reasonably expect most of the categories (drugs, guns, money, items related to drug transactions) to be included in such warrants. The question, rather, is whether probable cause supported the issuance of a warrant to seize those items *in this case*, and whether the items were described with sufficient particularity *in this case*.

warrant was clearly sufficiently particular as to items seized that formed the basis for the criminal charges. Thus, if there was any error in failing to suppress some of the evidence seized that related to indicia of occupancy, it was harmless. See Fed. R. Crim. P. 52(a).

Timley's next claim is that the district court abused its discretion in failing to grant him a Franks hearing. A defendant is entitled to such a hearing if he "makes a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant in the warrant affidavit," and "the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

Most of the statements alleged by Timley to be false or misleading concern Detective Carter's failure to state in the warrant application that it was Detective Gibson, rather than simply a concerned citizen, who was watching Timley and ran a background check on him. This does not establish an entitlement to a Franks hearing. We fail to see how inclusion of Gibson as the source of some background information affects probable cause. On the contrary, the application as it was submitted lists no source for that information, putting the source in the same category as an anonymous tipster. If the tipster was known to be a detective trained in surveillance techniques and familiar with drug trafficking, his information would likely be given more weight by a magistrate than if the tipster was unnamed. Accord Illinois v. Gates, 462 U.S. 213, 232 (1983) (recognizing that the weight to be given to an informant's tip changes based on the totality of the circumstances because "[i]nformants' tips doubtless come in many shapes and sizes from many different types of persons").

Secondly, even without any of the information from Gibson, there were enough facts before the magistrate to support issuance of the warrant. Specifically, there was evidence of two trash pulls, conducted within a week of one another, and which yielded small and large bags containing marijuana and residue. As Timley recognizes, our court "appears close to a blanket [exception] holding that trash pulls, standing

alone, provide probable cause for the issuance of a search warrant in all cases." (Def. Br. at 40.) In United States v. Briscoe, 317 F.3d 906, 907-08 (8th Cir. 2003), our court was faced with the question of whether there was probable cause for issuance of a warrant based solely on a trash pull that yielded forty marijuana seeds and twenty-five stems. We held that there was, recognizing that possession of marijuana seeds was criminal under both federal and state law. Id. at 908.

Similarly here, the trash pulls established probable cause to believe Timley, or someone else at Timley's residence, was engaged in distribution of marijuana. One trash pull revealed eleven baggies with marijuana residue on them, leading to the inference that marijuana had been or was being packaged for distribution. Moreover, on the other trash pull, officers found a quantity of marijuana in a large trash bag, leading to an inference that marijuana had been transported in that bag and that it was more than a user quantity. As in Briscoe, distribution of marijuana is both a federal and state crime. 21 U.S.C. § 841(b)(1)(D); Mo. Rev. Stat. § 195.211. Because probable cause supported the warrant's issuance even without the challenged portions of the supporting application, we find no error in the district court's denial of a Franks hearing.

Lastly, Timley asserts that the evidence must be suppressed because officers failed to follow the procedural mandates of Missouri law in obtaining the warrant. Specifically, he notes that Missouri law deems warrants invalid if the written application accompanying it is not "filed and verified," as required by Missouri Statute section 542.276(10)(2), and alleges that the written application was never actually filed in this case. "Evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution simply because the underlying search warrant failed to conform to state law." United States v. Dishman, 377 F.3d 809, 811 (8th Cir. 2004); United States v. Hornbeck, 118 F.3d 615, 617 (8th Cir. 1997).

Our circuit has suggested that, in some circumstances, principles of comity may favor federal courts excluding evidence seized by state officers in violation of state law. See, e.g., United States v. Eng, 753 F.2d 683, 686 (8th Cir. 1985). We have also held, however, that a procedural violation of state or federal law in securing a warrant ought not result in suppression of the evidence unless the law was either deliberately violated, or the defendant was prejudiced by the violation in the sense that absent the violation the search may not have occurred. United States v. Freeman, 897 F.2d 346, 349 (8th Cir. 1990).

Assuming a violation of Missouri's state law occurred here, the technical irregularity does not warrant suppression. Timley complains that the application supporting the warrant was never actually filed, which we assume is true. There is no question, however, that it was presented to a magistrate for a determination of probable cause. As such, Timley was not prejudiced by the violation. Moreover, the district court accepted Detective Carter's testimony at the suppression hearing that he did not realize that failing to file the warrant application was a violation of state law. This is not a case in which officers flagrantly disregarded state law on the view they could simply seek a federal prosecution and ignore state law. Thus, while in an appropriate circumstance suppression may be warranted in a federal prosecution if the evidence shows state officers purposely subverted state law, this is not such a case. We therefore affirm the district court's denial of Timley's motion to suppress.

## II.  TIMLEY'S RULE 41(g) MOTION FOR RETURN OF PROPERTY

Timley moved the district court for an order directing the return of property seized during the April 16, 2003 search. The district court denied the motion without a hearing, reasoning that a hearing was unnecessary because "[t]he evidence that defendant seeks to introduce in support of this motion is precisely the same as the evidence defendant has introduced or attempted to introduce in support of his motion to suppress." (Def. Addendum at 138.) Timley appeals the denial of his motion and the court's refusal to permit him a hearing on the motion.

-11-

Federal Rule of Criminal Procedure 41(g) states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return," and requires the court to hold a hearing on "any factual issue necessary to decide the motion." Where there is a fact dispute regarding who has custody or is entitled to possession of the subject property, the court must hold a hearing to determine those issues. United States v. Felici, 208 F.3d 667, 670 (8th Cir. 2000); United States v. Burton, 167 F.3d 410, 410-11 (8th Cir. 1999).

The defendant's position on this issue is far from clear. He contends that the district court erred by denying his motion without a hearing because he was unlawfully deprived of over 580 items seized by the government. Yet he concedes that most, if not all, of these items have been returned by the government. He also asserts that the government seized three of his vehicles that were not listed in its inventory of the April 16, 2003 search, and is holding them for no reason, entitling him to a hearing on the question of whether he can get them back.

We find no error in the court's refusal to hold a hearing on the Rule 41(g) motion. Timley's motion for return of property did not mention any vehicles, nor did it state any basis for the motion other than that the subject property was seized illegally–a notion the district court already dispelled. Because the district court had already disposed of all issues regarding the legality of the search and seizure in dealing with Timley's suppression motion, and because the vehicles were not specifically mentioned in the motion, there was no need for the court to have a hearing on whether Timley had a right to have the vehicles returned. Moreover, the government, by way of a letter to the Kansas City, Missouri police department, has authorized the return of Timley's property, obviating any need for a hearing on the matter.

## III. IMPROPER NOTICE OF INTENT TO RELY ON PRIOR CONVICTIONS

Timley contends that his sentence cannot stand because it exceeded the maximum statutory sentence available for his offense. Timley's offense of conviction has a maximum penalty of five years, unless the defendant has been convicted of a prior felony drug offense, whereupon the maximum penalty is ten years. 21 U.S.C. § 841(b)(1)(D). Pursuant to 21 U.S.C. § 851(a)(1), a defendant's sentence may not be increased by reason of his prior convictions unless the government files a written notice of its intent to rely on those convictions prior to entry of the defendant's guilty plea.

In this case, the government filed a § 851 notice as a part of Timley's original charges of conspiracy to distribute 100 kilograms or more of marijuana. Timley then entered into a plea agreement, by which he pled guilty to the lesser offense of conspiracy to distribute marijuana with no charged amount. The plea agreement contained the following language:

> The defendant understands that the maximum sentence which may be imposed for the charge to which he has agreed to plead guilty is not more than five (5) years of imprisonment, a $250,000 fine, not less than two (2) years of supervised release, and a $100 mandatory special assessment. Due to the defendant's prior drug convictions, however, the maximum sentence which may be imposed is not more than ten (10) years imprisonment, a $500,000 fine, not less than four (4) years of supervised release, and a $100 mandatory special assessment.

(Gov't App. at 31-32.)

Pursuant to the plea agreement, the government filed a new, superseding information charging Timley with the lesser offense. It did not, however, refile the § 851 notice of its intent to rely on Timley's prior convictions to increase his statutory

-13-

maximum sentence. Timley argues that this failure limits his sentence to five years, the maximum sentence available without using his prior convictions.

To accept Timley's argument in light of his plea agreement, our court would have to hold that a defendant cannot waive receipt of proper § 851 notice. In other words, we would have to hold that § 851 is a jurisdictional matter, such that the failure to file proper § 851 notice deprives the court of jurisdiction to impose an increased sentence. Presented with that option, our court has specifically declined to accept it. See United States v. Mooring, 287 F.3d 725, 727-28 (8th Cir. 2002) (finding that a defendant's stipulation to receiving proper § 851 notice effectively barred the defendant from challenging that issue on appeal). Instead, we reasoned that notice may be sufficient where a defendant had received "the protections intended by the statute," by receiving notice of the prior conviction, the effect it would have on the maximum sentence, and an opportunity to dispute the conviction. Id. at 728; accord United States v. Curiale, 390 F.3d 1075, 1077 (8th Cir. 2004) (per curiam) (noting that in considering whether the defendant received proper § 851 notice, "courts are careful not to elevate form over substance"). Furthermore, we have concluded that "the government is not required to refile a notice of enhanced sentence under 21 U.S.C. § 851 after the return of a superseding indictment." United States v. Kamerud, 326 F.3d 1008, 1014 (8th Cir. 2003).

Given the above precedent, the government's failure to refile the § 851 notice in this case cannot lead to reversal of Timley's 92-month sentence. First, it is very clear from the plea agreement that Timley understood that his sentence would be increased due to his prior convictions, and he agreed to that by operation of signing the document. Moreover, a § 851 notice was filed in this case; it was done with the original charge, but not refiled with the superseding information. Under Kamerud, refiling of the notice is not required when a superseding indictment is filed. 326 F.3d at 1014. A superseding indictment and a superseding information are of the same nature; they both charge the defendant with a felony offense. The only difference is that the prosecution may file an information instead of an indictment where the

defendant agrees to waive formal indictment. Fed. R. Crim. P. 7(b). It would be incongruent to hold that the government need not refile the notice for a superseding indictment, but that it must refile the notice for a superseding information. Thus, we find no reversible error attached to the failure to refile the § 851 notice.

## IV.   FORFEITURE ISSUES

Lastly, we consider the proper disposition of the $130,097 in cash that the Kansas City police department seized and the federal government seeks to forfeit. The district court held that it was not empowered to forfeit the money because of a competing, contrary, state court ruling on the matter. The court thus ordered the money to be released to Patrick Peters, Timley's lawyer, as payment for Peters's services on state court matters related to the $130,097.

Missouri has established a procedure for instituting state forfeiture proceedings, see Missouri Statute section 513.607, as well as a procedure for transferring property seized by state agents to federal agencies for the purpose of instituting federal forfeiture proceedings, see Missouri Statute section 513.647. In this case, Clay County authorities attempted to transfer the $130,097 seized from Timley to the federal government for federal forfeiture proceedings in lieu of instituting state forfeiture proceedings. Timley objected. The Clay County circuit court held that the statute under which transfer was attempted was unconstitutional because it did not provide Timley with sufficient notice of the transfer, and further held that the County's attempt to apprise Timley of the transfer by sending notice to his home address when the County knew he was in jail made the notice ineffective. Thus, the Clay County circuit court ordered the $130,097 returned to Peters for him to hold for Timley's benefit.

When Timley entered into a plea agreement on the instant offense, he agreed to plead guilty not only to the conspiracy charge, but to plead guilty to the criminal forfeiture. He specifically agreed that "the $130,097.00 recovered from the

-15-

defendant's residence on April 17, 2003, are proceeds of the conspiracy to distribute narcotics and forfeitable to the United States government," and that he would "take all steps necessary for this $130,097.00 to be forfeited to the United States government." (Gov't App. at 40.) When the court took up the issue of the forfeiture, however, Peters objected on his own behalf. He claimed that he had a valid third-party interest in the $130,097, because Timley agreed to pay him out of that money for his attorney's fees if Peters successfully kept the state from transferring the money to the federal government. Peters also maintained that to order the federal forfeiture of money that the state court did not allow to be transferred to the federal government would violate the Rooker-Feldman doctrine's prohibition on attacking final state court judgments through federal suit. The district court held that Missouri state courts were the first to obtain jurisdiction over Timley's $130,097 as evidenced by its motion to transfer the money to the federal government. It further held that the Rooker-Feldman doctrine precluded the court from forfeiting the money, since this would effectively negate the circuit court's order that the money could not be transferred to the federal government.

Peters first argues that we are barred from considering this matter because the federal courts have never asserted jurisdiction over the *res*. "Traditional forfeiture law makes the *res* the principal focus of the action." United States v. $12,390, 956 F.2d 801, 803 (8th Cir. 1992). It is "well-settled law that only one court may have jurisdiction over the *res* in an *in rem* proceeding, and therefore the first court to obtain *in rem* jurisdiction maintains it to the exclusion of all others, whether that court be state or federal." Madewell v. Downs, 68 F.3d 1030, 1041 n.13 (8th Cir. 1995). However, under conventional rules of *in rem* jurisdiction, once the *res* has been distributed, the deciding court no longer has jurisdiction over it. $12,390, 956 F.2d at 804. This case differs slightly from traditional forfeiture law because it is an *in personam* proceeding against the defendant, not his property. See 21 U.S.C. § 853(a) (making the defendant's property subject to forfeiture); United States v. Lester, 85 F.3d 1409, 1412-13 (9th Cir. 1996) (stating that only the defendant's property is subject to forfeiture). Still, where, as here, the state court has ordered return of the *res*

to the defendant, that court no longer has any, let alone exclusive, jurisdiction over the *res*. Thus, once the *res* is returned to the defendant, the federal court is not barred from seeking to forfeit it.

That does not end the matter. We next must consider whether the district court lacked subject matter jurisdiction because of operation of the Rooker-Feldman doctrine. The Rooker-Feldman doctrine acts as a jurisdictional bar, such that federal courts are not permitted to reconsider matters finally decided by state courts. Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). This rule not only prohibits "straightforward appeals," but also federal court review of matters "inextricably intertwined" with state court rulings. Id. at 492-93. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Id. at 493 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Reviewing the record in this matter, we find nothing in the Rooker-Feldman doctrine that would prohibit the federal forfeiture. It is true that the existence of a state court ruling affecting the $130,097 certainly complicates matters. Central to the state court's ruling, however, was its refusal to transfer the $130,097 to the federal government because Missouri's transfer statute was unconstitutional and because the state in this case gave Timley insufficient notice of its intent to transfer. Obviously, the federal court is not permitted to reconsider those rulings, but that does not strip the court of jurisdiction altogether; the court remains free to consider matters not intertwined with the state court ruling. The court here was not asked to reconsider the constitutionality of Missouri's transfer statute, as the money was no longer in state custody at the time of the federal forfeiture proceedings. Rather, the question before the federal court was whether the money seized was subject to federal forfeiture, a matter the state court did not address.

Timley is not objecting to the forfeiture; in fact, he has agreed to assist with it. Rather, it is Peters who claims a third-party interest in the $130,097. His third-party interest cannot defeat the federal forfeiture, since the government's interest in the property to be forfeited "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); see also § 853(n)(6)(A) (stating that a third-party claimant's interest in forfeitable property is only valid if such interest vested prior to the time that the acts giving rise to the forfeiture were committed). Peters's third-party claim for attorney's fees, which vested on June 25, 2003, does not give him a legal right to money that was derived from a drug conspiracy that began before that date.[6] Accord United States v. Monsanto, 491 U.S. 600, 613-14 (1989) (holding that § 853's forfeiture provisions operated with equal force to monies the defendant sought to use to retain a lawyer). The district court's ruling to the contrary was error.

## CONCLUSION

For the reasons stated above, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

————————————————

—————

[6]The charged conspiracy in this case lasted from December 1, 2002 to April 17, 2003.