GRUENDER, Circuit Judge.
Corporal Ross Spurlock of the Arkansas Game and Fish Commission (“AGFC”) appeals the denial of his motion to dismiss various claims related to the search of a residence. Although Spurlock conducted the challenged search pursuant to a warrant, the district court determined that he was not entitled to qualified immunity because a reasonable officer would have known that the warrant should not have issued based on the information Spurlock provided to the issuing court. We reverse because it was not entirely unreasonable for Spurlock to believe that his affidavit established sufficient indicia of probable ■cause for the search and seizure of the items listed in the warrant.
The AGFC opened an investigation into Christopher (‘Wollie”) and Katy Kiesling in March 2014, after receiving an anonymous tip that Katy was in possession of a small, live deer. Spurlock became involved in the case later that month when he obtained information from the Pulaski County Sheriffs Office (“PCSO”) suggesting that the Kieslings were keeping the deer as a pet, in violation of section 9.14 of the AGFC Code.[3] See Ark. Code R. § 002.00.1-09.14. During a recorded jailhouse call, Vollie indicated that he was in possession of a recently injured “button buck” and that, while on the phone, he was standing on his porch “watching him through the window.” Spurlock interpreted this to mean that the Kieslings were keeping the deer inside their home — a separate offense under the AGFC Code. See id. Based on his experience and training, he also concluded that the deer was captured after July 1, 2012, the cutoff for the grandfather exception to section 9.14’s prohibition on keeping deer *532 as pets, given that button bucks are by definition less than one year old.
Citing the above information as probable cause to believe that there was an illegally held pet deer at the Kiesling residence, Spurlock prepared an affidavit for a warrant to search their home and seize certain items. The affidavit described the residence and stated that it contained various items “tending to demonstrate that a criminal offense has been committed, to-wit: Arkansas Game and Fish Commission Code 9.14 (Native Wildlife Pets Restricted).” Specifically, the affidavit suggested that there was probable cause to believe that the Kieslings were “concealing] ... certain property, to-wit: a male whitetail deer, to wit: pens or cages, deer food, ledgers documenting the capture or sale of wildlife, photographs of captured or illegally taken wildlife, specifically deer.” Based on this affidavit, a state court judge issued a search-and-seizure warrant for the Kies-ling residence. The warrant directed law enforcement to search the Kiesling residence and seize the following evidence:
(1) a button buck whitetail deer[;] (2) books, records, receipts, notes, ledgers, and other personal papers to the capture or sale of wildlife, specifically deer, pens or cages of housing wildlifef;] (3) photographs, in particular photographs of captured or illegally taken wildlife, specifically deer[;] (4) indicia of ownership of the above described property; (5) computers, digital and/or electronic storage devices, and any digital and/or electronic remov[able] media, tending to demonstrate that criminal offenses have been committed[;] (6) and all other instrumen-talities including firearms and monies of criminal activity....
On March 21, 2014, Spurlock and other AGFC officers executed the warrant. The agents seized a live deer from the home and also discovered evidence of other crimes, which prompted Spurlock to contact the PCSO. The PCSO obtained its own search warrant, searched the premises pursuant to that warrant, and arrested Vollie on firearm and drug possession charges. Subsequently, during a hearing in the State’s criminal case against Vollie, a different state court judge found that Spurlock’s affidavit lacked sufficient indicia of probable cause to justify the initial warrant, and thus, the court granted Vollie’s motion to suppress the evidence obtained from both searches. See Wong Sun v. United States, 371 U.S. 471, 484-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (excluding evidence obtained as “fruit of the poisonous tree” of an unlawful action). The State then dropped all charges against Vollie.
Thereafter, the Kieslings brought an action against Spurlock, various law enforcement agents, and Pulaski County under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, claiming that the initial search violated their constitutional rights and further alleging various state tort-law claims. The defendants then filed a motion to dismiss, asserting entitlement to qualified immunity because the alleged constitutional violations stemmed from a search conducted pursuant to a duly issued search warrant. The district court granted the motion as to all of the defendants except Spurlock. While acknowledging “that qualified immunity is usually granted to law enforcement officers operating under - a warrant issued by a neutral magistrate judge,” the court concluded that Spurlock, as the officer who prepared the warrant affidavit, “is not entitled to qualified immunity because a reasonably competent officer possessing the information available to [him] would have known that there was not probable cause to search for any of the items listed in the warrant except for the deer.” Spurlock timely filed this interlocutory appeal. See Barton v. Taber, 820 F.3d 958, 963 (8th *533 Cir. 2016) (“Although ordinarily a denial of a pretrial motion is not appealable, interlocutory appeals from the denial of qualified and statutory immunity are permitted under the collateral-order doctrine”).
“We review de novo the denial of a motion to dismiss on the basis of qualified immunity.” Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005). “To prevail at this stage of the proceedings, defendants must show that they are entitled to qualified immunity on the face of the complaint.” Id. (citation omitted). The exhibits attached to the Rieslings’ second amended complaint, including a copy of the search warrant affidavit and the warrant itself, “are part of the complaint for this purpose.” See id. (citations omitted); see also Fed. R. Civ. P. 10(c).
The doctrine of qualified immunity “protects government officials ‘from liability for civil damages insofar as then-conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Stepnes v. Ritschel, 663 F.3d 952, 960 (8th Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Qualified immunity “‘gives ample room for mistaken judgments’ by protecting ‘all but the plainly incompetent or those who knowingly violate the law.’ ” Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). Whether an official may be held personally liable for an official act “generally turns on the ‘objective legal reasonableness’, of the [official’s] action, assessed in light of the legal rules that were ‘clearly established’ at the time it was taken.” Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).
The parties agree that the Supreme Court’s opinion in Messerschmidt v. Millender guides our analysis of qualified immunity where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant. 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). Relying on its earlier decisions in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Messerschmidt Court recognized that a warrant generally confers a “shield of immunity” to officers acting within the scope of its authority. 565 U.S. at 546-48, 556, 132 S.Ct. 1235. In such circumstances, the Court explained, “the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner.” Id. at 546, 132 S.Ct. 1235. However, this' rule is not absolute. The Supreme Court long ago rejected the notion that officers are automatically entitled to qualified immunity because a magistrate approved a warrant application, Malley, 475 US. at 345, 106 S.Ct. 1092, and Messerschmidt reiterated the “exception allowing suit ... where the warrant was ‘based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,’ ” 565 U.S. at 547, 132 S.Ct. 1235 (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405). At the same time, Messerschmidt emphasized that “the threshold for establishing this exception is a high one, and it should be.” Id. Given the “sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination,” id. (quoting Malley, 475 U.S. at 346 n.9, 106 S.Ct. 1092), the Court predicted, “[t]he occasions on which this standard will be met may be rare,” id. at 556, 132 S.Ct. 1235.
*534 Spurlock contends that the district court erred in finding that his conduct falls within the narrow scope of the exception identified in Messerschmidt. Primarily, he argues that “the District Court’s acknowl-edgement that there was probable cause for the deer is in and of itself sufficient to demonstrate the warrant was not 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.’ ” See id. at 547, 132 S.Ct. 1235. Alternatively, he challenges the district court’s determination that the warrant affidavit failed to establish probable cause with respect to the other items the warrant authorized to be seized. Whether or not the existence of probable cause for one item in a warrant is sufficient to immunize defects as to all of the other items, we conclude that Spurlock retains the shield of immunity conferred by the warrant because it was not entirely unreasonable for him to believe that his affidavit established sufficient probable cause for the search and seizure of the items included in the warrant.
As an initial matter, it is important to emphasize that the relevant inquiry in cases such as this is not whether a warrant application was, in fact, sufficient to establish probable cause of criminal activity. Rather, when a search or seizure is conducted pursuant to a duly issued warrant, we must determine whether it was “entirely unreasonable” for an officer to believe that the warrant application established probable cause.[4] Id. at 553, 556, 132 S.Ct. 1235; see also United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005) (holding that it was objectively reasonable for an officer to rely on the validity of a warrant where “the [officer’s] affidavit, while scant, was not so utterly lacking in facts as to render [his] belief that it established probable cause ‘entirely unreasonable.’ ”). The facts of Messerschmidt help clarify just how much “breathing room” this standard affords law enforcement officers like Spur-lock. See 565 U.S. at 546, 132 S.Ct. 1235 (citation omitted). The target of the warrant in Messerschmidt was a known gang member who was reported to have fired a sawed-off shotgun with a pistol grip at his girlfriend because she had called the police on him. Id. at 539-41, 132 S.Ct. 1235. In addition to the weapon used in the assault, of which the police had a precise description, the affiant-officer included an extensive list of other items to be seized in the warrant application — ranging from “[a]ll handguns, rifles, or shotguns of any caliber” and “[a]ll caliber of ammunition, miscellaneous gun parts, gun cleaning kits, [and] holsters” to “receipts or paperwork” related to the firearms, and even evidence of the target’s street gang membership, which included “writings or graffiti” and “photographs or photograph albums.” Id. at 541-42, 132 S.Ct. 1235. The warrant affidavit also identified the two crimes under investigation as spousal assault and assault with a deadly weapon. Id. at 550, 132 S.Ct. 1235.
Echoing the Kieslings’ argument in this case, the plaintiffs in Messerschmidt argued that law enforcement “failed to provide any facts or circumstances from which a magistrate could properly conclude that there was probable cause to seize the broad classes of items being sought.” Id. at 548, 132 S.Ct. 1235. As *535 such, they suggested, “[n]o reasonable officer would have presumed that such a warrant was valid.” Id. (alteration in original). The Supreme Court forcefully rejected this argument:
Even if the scope of the warrant were overbroad in authorizing a search for all guns when there was information only about a specific one ... [and] for evidence of gang membership ... it would not have been ‘entirely unreasonable’ for an officer to believe that the ... the affidavit established a fair probability that such evidence would aid the prosecution of [the target] for the criminal acts at issue.
Id. at 548-49, 553, 132 S.Ct. 1235. Therefore, the Court held that the officers were entitled to qualified immunity. Id. at 556, 132 S.Ct. 1235. Based on Messerschmidt’s factual similarity with the present case, we conclude that this precedent compels the same result for Spurlock.[5]
On the record before us, we hold that it was not entirely unreasonable for Spurlock to believe that his affidavit established sufficient probable cause for the search and seizure of the items included in the warrant. First, the district court found, and the Kieslings effectively concede, that the affidavit provided probable cause to seize the deer, based on the anonymous tip and the recorded jailhouse call.[6] Second, we agree with Spurlock’s argument that the items described in numbers two through four of the warrant — which include documentation related to the “capture or sale of wildlife” (item two), photographs related to illegally captured wildlife (item three), and indicia of ownership of the first three categories of items to be seized (item four) — were relevant to the criminal offense under investigation, as they directly related to the existence, capture, and maintaining of a pet deer. Cf. United States v. Timley, 443 F.3d 615, 623 (8th Cir. 2006) (finding valid a warrant authorizing the seizure of “equipment used to further drug transactions, documents relating to drug transactions ... and photographs of coconspirators or objects of the conspiracy”). Finally, we agree with the Kieslings that items five and six include somewhat broad, categorical language in identifying digitally stored evidence and several possible instrumentalities of criminal activity, including cash and firearms. However, like the gang paraphernalia, photo albums, and other weapons seized in Messerschmidt, there was at least a fair probability that these items would be found and that they would “aid [in] the prosecution of ... the criminal act[ ] at issue.” See 565 U.S. at 552-53, 132 S.Ct. 1235; see also id. at 552 n.7, 132 S.Ct. 1235 *536 (“The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only probable cause ... to believe the evidence sought will aid in a particular apprehension or conviction.” (citation and internal quotation marks omitted)).
The dissent contends that there is “no plausible connection” between the misdemeanor offense of keeping a deer as a pet and the items described in numbers five and six of the warrant. See post at 538 n.8, 538-39. As an initial matter, the dissent appears to require actual probable cause and ignores Messerschmidt’s more lenient “entirely unreasonable” standard. Regardless, we do not agree that the inclusion of these items rendered Spurlock’s reliance on the warrant entirely unreasonable. First, the inclusion of digital storage devices does not defeat immunity because there was a fair probability that officers would find digitally stored pictures of the deer or records of its purchase or the purchase of food, pens, or other related items. At the very least, it would not be entirely unreasonable for Spurlock to reach this conclusion, and Messerschmidt explicitly approved of the seizure of evidence that helps establish possession of items related to the crimes specified in a warrant application. 565 U.S. at 552, 132 S.Ct. 1235 (explaining that, even if evidence is not directly related to the target offenses, “a reasonable officer could still conclude that [such evidence] would aid in the prosecution of [the suspect] by, for example, demonstrating [his] connection to other evidence found [nearby]”).
As for the evidence of other instrumen-talities of criminal activity, we agree with the dissent that the warrant affidavit likely fails to establish probable cause due to its limited focus on AGFC Code § 9.14. However, it would not be “entirely unreasonable” for Spurlock to conclude that suspects keeping a live deer in their home also may be engaging in wildlife trafficking, which would constitute a violation of AGFC Code § 9.07. See Ark. Code R. § 002.00.1-09.07 (prohibiting the sale of wildlife without a valid permit). Relying on this inference, a reasonable officer could conclude that money, guns, and other such evidence would be relevant for a future prosecution in the same way that similar instrumentality evidence was justified in Messerschmidt. There, the Court suggested that officers would not be entirely unreasonable in concluding that they might find other illegal guns — separate and apart from the pistol-gripped sawed-off shotgun associated with the assault — for the purpose of pursuing potential firearm charges not referred to in the affidavit. Id. at 535, 132 S.Ct. 1235. Likewise, although Spurlock did not explicitly note any suspicion of wildlife trafficking in his affidavit, he alluded to it by stating that the Kies-lings had “ledgers documenting the capture or sale of wildlife,” and it was not entirely unreasonable for him to have reached this conclusion. We do not see how this materially differs from Messerschmidt’s, rationalization for the broad search for firearm evidence — not to mention the inclusion of unrelated gun paraphernalia like the holsters, cleaning kits, and ammunition. Thus, even assuming that the warrant was overbroad as to these final two categories, this was not a case where the issuing judge “so obviously erred that any reasonable officer would have recognized the error.” Id. at 548-49, 132 S.Ct. 1235.
In sum, although we are inclined to think that the affidavit contained sufficient indicia of probable cause to support the seizure of most of the items in the warrant, at a minimum, this is not the rare case where a warrant affidavit is “so lacking in indicia of probable cause as to ren *537 der official belief in its existence entirely unreasonable.” Id. at 547, 132 S.Ct. 1235 (citation omitted). As such, the district court erred in determining that Spurlock was not entitled to qualified immunity.[7]
Accordingly, the district court’s order denying qualified immunity as to Officer Spurlock is reversed.

.Contrary to the Kieslings' assertion, the act of violating an AGFC regulation constitutes a criminal misdemeanor under Arkansas law. See State v. Herndon, 365 Ark. 185, 226 S.W.3d 771, 774 (2006).

. Given the stark contrast between our analysis of qualified immunity and that of an underlying constitutional right, we do not share the dissent’s concern that our "opinion could potentially permit overbroad, and thus unconstitutional, warrants ... substantially weakening the Fourth Amendment’s protections against general searches.” Post at 537. To be clear, our analysis is limited to the question of whether Spurlock, who acted pursuant to a duly issued warrant, is entitled to qualified immunity under Messerschmidt.

. The dissent reads Messerschmidt to suggest that “the facts in the affidavit must include indicia of probable cause for each item in a warrant.” Post at 538 (emphasis added). While the dissent is correct that Messerschmidt seems to indicate that probable cause existed to search for other illegal guns, gang paraphernalia, and photographs or photo albums, it ignores the Court's alternative analysis, where it assumed that probable cause was lacking as to these items but nonetheless concluded that the officers retained qualified immunity as such evidence could "aid [in] the prosecution of ... the criminal acts at issue.” See 565 U.S. at 548-53, 132 S.Ct. 1235.

. The Kieslings do suggest that Spurlock "didn’t know for sure whether the deer was illegal or not,” based primarily on the AGFC Code's grandfather clause. While the fact that Vollie identified the deer as a "button buck” establishes with near certainty that the deer was born after the grace period’s cutoff date of July 1, 2012, such certainty is not required. Rather, to lose the shield of immunity conferred by the warrant, it must have been objectively unreasonable for Spurlock to believe that the affidavit established probable cause that the deer was illegal, see Messerschmidt, 565 U.S. at 546-47, 132 S.Ct. 1235, and his affidavit plainly meets this low threshold.

. As an alternative basis for affirmance, the Kieslings invoke three other purported exceptions to the general rule immunizing officers who conduct searches and seizures pursuant to a warrant. Even assuming that Messerschmidt implicitly adopted these exceptions through its reliance on relevant precedent, none serves to defeat qualified immunity based on the record before us. For the first two exceptions, the Kieslings argue that Leon established that officers may be subject to liability despite the existence of a warrant: (1) where a warrant affidavit is based on "knowing or reckless falsity,” and (2) where the issuing judge fails to "perform his 'neutral and detached function’ and [instead] serve[s] merely as a rubber stamp for the police.” 468 U.S. at 914, 104 S.Ct. 3405 (citations omitted). Although the Kieslings claim that the affidavit here "was based on false information and omissions,” they point only to Spurlock’s conclusion that a crime had been committed, arguing once again that he could not be certain that they illegally possessed the deer. This, is simply not enough to suggest that Spurlock was untruthful in his affidavit. Likewise, the Kieslings point to no facts suggesting that the issuing judge abandoned his neutrality. Finally, for the third purported exception, the Kies-lings rely on Groh v. Ramirez for the premise that "a warrant may be so facially deficient ... that the executing officers cannot reasonably presume it to be valid” and thus lose the shield of qualified immunity. 540 U.S. 551, 565, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). However, the only defect they identify is the alleged incompatibility between the factual claims in the affidavit and the scope of items to be seized. Messerschmidt expressly rejected this interpretation of Groh, noting that this precedent was "far afield” because "any defect [related to overbreadth] would not have been obvious from the face of the warrant.” 565 U.S. at 555-56, 132 S.Ct. 1235. As such, none of these three exceptions provides an alternative basis for affirmance.