# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3300
_____

Brad Wendt; Donald Kinzie; Dustin Hansen

*Plaintiffs - Appellants*

v.

State of Iowa; Jeremy King, DNR Officer; Brian Smith, DNR Officer

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 14, 2020
Filed: August 21, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

After investigations by two officers of the Iowa Department of Natural Resources (DNR), plaintiffs Bradley E. Wendt, Donald D. Kinzie, and Dustin A. Hansen received criminal citations for trespassing and traffic violations, while hunting. The hunters sued, alleging, among other claims, unreasonable search and seizure under the Fourth Amendment and the Iowa Constitution, and violations of

substantive due process rights. The district court[1] dismissed the unreasonable seizure claim for failure to state a claim, and granted summary judgment to the officers on the unreasonable search and substantive due process claims. The hunters appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In January 2015, the Iowa DNR received complaints that Wendt and Kinzie were hunting deer from a truck, without permission from the property owners. DNR officer Brian L. Smith investigated the complaint, visiting the property, taking photos, and collecting six witness statements and trespass forms from the owners. The owners added that Hansen was also involved in the hunt, shooting from a different truck. DNR officer Jeremy King interviewed Hansen and Kinzie. Corroborating the witness statements, Kinzie admitted that he, Wendt, and Hansen hunted from two separate vehicles to flush the deer toward each other, while communicating by cell phone. On the day of the hunt, Wendt and Kinzie had both registered bucks on Iowa's harvest report system; Hansen registered one the next day. Based on the evidence, Officer Smith prepared criminal citations against the hunters. Each was served with several citations. All charges against Wendt and Kinzie were eventually dismissed. Hansen was convicted of two citations: violating one-way traffic designation, and improperly using the median, curb, or access highway.

The district court dismissed an unreasonable seizure claim for failure to state a claim (which the hunters appeal), and three state tort claims for lack of subject matter jurisdiction (not appealed). Almost all of this appeal concerns the parts of Count I and Count II that survived the motion to dismiss. Most of Count I alleges that the officers conducted unreasonable searches in violation of the Fourth

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

-2-

Amendment and Article I, § 8 of the Iowa Constitution by (1) unlawfully and without probable cause obtaining search warrants and subpoenas for the hunters' Facebook records and (2) unlawfully placing a GPS tracking device on Wendt's vehicle. Count II alleges that the hunters' substantive due process rights under the Fifth and Fourteenth Amendments and Article I, § 9 of the Iowa Constitution were violated "with regard to the Plaintiffs exercising their right to own and use guns as protected by the Second Amendment." The district court ruled that the hunters could not bring a substantive due process claim based on the Second Amendment, but could pursue a substantive due process claim for the officers' arbitrary and capricious conduct during their criminal investigations. The court later granted summary judgment to the officers on all the claims that survived the motion to dismiss. The hunters appeal.

II.

Count I of the complaint alleged that officers King and Smith, in their individual capacities, executed an unreasonable seizure in violation of the Fourth Amendment and Article I, § 8 of the Iowa Constitution by "unlawfully and without court order, citing them for criminal behavior without probable cause." The hunters appeal only the dismissal of the Iowa Constitutional claim.

The Supreme Court of Iowa follows "an independent approach" in the application of its state constitution. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). However, "[w]here a party raises both state and federal constitutional claims but does not argue that a standard independent of the federal approach should be employed under the state constitution, we ordinarily apply the substantive federal standards. . . ." *State v. Tyler*, 830 N.W.2d 288, 291-92 (Iowa 2013) (applying the "general standards as outlined by the United States Supreme Court" to unreasonable search and seizure claims under Article 1, § 8); *State v. Wickes*, 910 N.W.2d 554, 576 (Iowa 2018) (Appel, J., specially concurring) (collecting cases) ("When a party brings claims under parallel provisions of the Iowa and United States Constitutions, but does

-3-

not advance a different substantive standard under the Iowa Constitution but simply incorporates prevailing federal standards, we apply the prevailing federal substantive standard but reserve the right to apply federal standards in a fashion more stringent than federal cases.").

According to the complaint, Officer Smith served citations on Kinzie, and Officer King served Hansen. Wendt was not served by either officer; instead the citations were allegedly "verified by Defendant Smith." The district court, assuming as true the facts in the complaint, found no seizure under the prevailing federal standards because the officers were alleged only to have issued or verified citations. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (listing circumstances that amount to a seizure); *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001) (The Eighth Circuit "has never held that pretrial restrictions such as [being forced to post bond, appear in court, or made to answer charges] constitute a Fourth Amendment seizure.").

After careful de novo review, this court concludes that the district court properly dismissed these claims as failing to state a claim upon which relief could be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, a complaint must contain enough facts, accepted as true, to state a claim to relief that is plausible on its face); *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (de novo review). *See generally* **8th Cir. R. 47B**.

III.

The district court granted summary judgment on the basis of qualified immunity for the hunters' unreasonable search claims. They assert on appeal that the summary judgment was *sua sponte* "on an issue neither briefed nor argued by the Defendants. . . ." To the contrary, each party briefed and argued qualified immunity on both the state and federal constitutional claims. True, before the district court

-4-

made any rulings, the Iowa Supreme Court decided *Baldwin v City of Estherville*, 915 N.W.2d 259 (Iowa 2018). The court there, for the first time, held that the qualified immunity defense applies to Iowa constitutional claims, but that the standard for it differs from the federal standard. **Baldwin**, 915 N.W.2d at 281 ("[W]ith respect to a damage claim under article 1, sections 1 and 8, a government official whose conduct is being challenged will not be subject to damages liability if she or he pleads and proves as an affirmative defense that she or he exercised all due care to conform to the requirements of the law.").

At the motion to dismiss stage, both parties briefed the new "all due care" qualified immunity standard as applied to the hunters' unreasonable search claim under Article I, § 8 of the Iowa Constitution. The officers again raised qualified immunity at the summary judgment stage, although neither party referenced the new standard, instead applying federal standards. The district court, noting the error, applied the correct legal standard to the Iowa constitutional claim. The hunters do not challenge that *Baldwin* is the applicable Iowa standard, or that the district court correctly applied the new standard to the facts of this case. They also do not argue they were not given an adequate opportunity to brief the issue. *See **Barkley, Inc. v. Gabriel Bros., Inc.***, 829 F.3d 1030, 1041 (8th Cir. 2016) ("Federal district courts have power to grant summary judgment *sua sponte* when the losing party is given sufficient advance notice and an adequate opportunity to submit evidence in opposition."). The district court did not err in considering summary judgment for the unreasonable search claims under the Iowa Constitution.

A.

In the complaint, the first unreasonable search claim was that the officers "unlawfully and without probable cause obtain[ed] search warrants for Plaintiffs' Facebook records, including private messages. . . ." The warrants sought Facebook records for the hunters from December 1, 2012, through December 17, 2015. The

warrant applications contained Officer King's statement that the hunters (1) used trucks and mobile communication devices to illegally hunt and harvest deer in Cass and Audubon Counties, (2) recklessly discharged firearms, and (3) uploaded pictures and comments to Facebook that "hold crucial evidence for corroborating statements from witnesses, hunting party member's statements, and evidence collected by Officers." Also attached to the application was a witness's statement about pictures and comments posted by Wendt in 2013 that led the witness to believe Wendt had committed hunting violations. A state judge issued the search warrants.

In their brief against the officers' motion for summary judgment, the hunters argued, for the first time, that the warrants were overbroad. The district court ruled that probable cause supported the warrants, but refused to consider the overbreadth claim, noting it was improperly raised too late in the litigation. On appeal, the hunters argue (1) they timely alleged an overbroad warrant, and (2) the warrants lacked probable cause.

The hunters insist that the complaint's allegation of a lack of probable cause alleges that the warrant is overbroad. The hunters first raised the overbreadth argument after the close of discovery. As apparent from the hunters' brief on appeal, the overbreadth argument here focuses on "when" facts, which are different facts than those in the record for the general probable cause inquiry. *Cf. **Lewis v. Tripp***, 604 F.3d 1221, 1226 (10th Cir. 2010) (recognizing that the "initial obligation of the district court in assessing a qualified immunity defense at summary judgment is to set forth with specificity the *facts*–the who, what, when, where, and why–that a reasonable jury could infer from the evidence presented by the parties."). In terms of the law of qualified immunity, the United States Supreme Court considers separately whether the warrant is overbroad and whether the facts in an affidavit "actually establish probable cause." *See, e.g.*, ***Messerschmidt v. Millender***, 565 U.S. 535, 548-553 (2012) (holding (1) "[e]ven if the scope of the warrant were overbroad," it would not have been entirely unreasonable for an officer to believe there was probable

-6-

cause, and (2) whether the facts "actually establish probable cause is a question we need not decide.").

The district court properly refused to consider the overbreadth claim. The pleading requirements under the Federal Rules of Civil Procedure, while "relatively permissive," "do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *Singleton v. Arkansas Hous. Auth. Prop. & Cas. Self-Insured Fund*, 934 F.3d 830, 837 (8th Cir. 2019). *See WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 993 (8th Cir. 2018) (noting that defendant had notice of alleged grounds for breach of contract and was entitled to tailor its defense accordingly; "it was not required to intuit additional theories of liability that were not apparent from [plaintiff's] complaint."); *N. States Power Co. v. Fed. Transit Admin*, 358 F.3d 1050, 1057 (8th Cir. 2004) (where complaint lacked allegations that would notify defendant of claim, party could not manufacture claim late in litigation to avoid summary judgment).

As for probable cause, having carefully reviewed the parties' arguments and reviewed the record on appeal, this court concludes that the information in the warrant application was sufficient to support a finding of qualified immunity for the officers. *See Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017), *citing Messerschmidt*, 565 U.S. at 546-47 (recognizing that warrants issued by a neutral magistrate generally confer a "shield of immunity" to officers, with exception "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."). *See generally* **8th Cir. R. 47B**.

The district court properly granted summary judgment for the unreasonable search claim for the Facebook records.

B.

The second unreasonable search claim was added after discovery (by amendment of the complaint). The officers produced text messages from Officer Smith's work phone. The hunters argue that his text messages to Officer King raise a fact issue whether a tracker was placed on Wendt's vehicle. In the first text message, Officer Smith forwarded a congratulatory message from yet another officer about the hunters' case. In the second message, Officer Smith texted, an hour later, that "The tracker has been removed." Based on these messages, the complaint alleges that the officers caused damage by "unlawfully and without probable cause, or even bothering to seek a search warrant, placing a GPS tracking device on Wendt's vehicle. . ." In support of their interpretation of the messages, the hunters provided their own affidavits. Wendt attested: "Finding out about the GPS tracker illegally place [sic] on my truck during discovery in this case solved a mystery for me because I often wondered during the 2015 hunting season how the Defendants seemed to know every time I was out hunting and where I was." Hansen attested: "A tracking device on Brad's truck explains how the Defendants always seemed to be aware of when and where I was hunting whenever I hunted with Brad. When hunting with Wendt you just knew that the chances of getting pulled over and checked by DNR were much higher." Kinzie attested: "A tracking device on Brad's truck explains how the Defendants always seemed to be aware of when and where I was hunting whenever I hunted with Brad. . . . I always thought that was strange."

In response, Officer Smith submitted an affidavit attaching three documents about an unrelated criminal case not involving the hunters. These documents are an Application for Search Warrant Mobile Tracking Device; Search Warrant for Placement of Mobile Tracking Device; and Return of Search Warrant Mobile Tracking Device. The officers emphasize the dates on the documents: November 11, 2015–the search warrant in the unrelated case was applied for and issued; and, December 18, 2015–the tracking device was returned. The hunters counter that King

-8-

was not involved with the unrelated investigation, so there was no reason for Smith to communicate with King about removing a tracking device in that case. The hunters repeatedly assert that the "Return of Search Warrant" is only a "cover" for the claim that a GPS tracker was not placed on Wendt's vehicle because the form says nothing about the removal of the device.

The district court ruled that "Plaintiffs' allegation that Defendants placed a GPS tracker on Wendt's vehicle is, at best, speculative and contradicts all objective evidence in the record." The hunters insist that they raised a question of material fact whether a secret tracker was placed on Wendt's vehicle emphasizing three points: King was involved in the hunters' case and not the unrelated case to which Smith says he was referring; the wording of the two text messages (sent December 17, 2015); and the affidavits stating that the officers always seemed to know where Plaintiffs were. Having carefully reviewed the record and the parties' arguments on appeal, this court agrees with this well-reasoned grant of summary judgment for the officers. *See Reed v. City of St. Charles*, 561 F.3d 788, 791 (8th Cir. 2009) (district court is not required to accept unreasonable inferences or sheer speculation as fact). *See also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008) (de novo review of summary judgement). *See generally* **8th. Cir. R. 47B**.

## IV.

The hunters argue that the district court erred in granting summary judgment on their substantive due process claim that the officers did not conduct adequate investigations. According to the hunters, the facts of the case "show a concerted effort to get Wendt and his hunting partners on some charge, really any charge," and that this "conduct in targeting Plaintiffs shocks the conscience thereby violating due

process." This court reviews a grant of summary judgment de novo. *Torgerson*, 643 F.3d at 1042. Summary judgment is proper if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.*, *quoting* **Fed. R. Civ P. 56**. To establish a constitutional violation, a plaintiff must prove the defendant's "failure to investigate was intentional or reckless, thereby shocking the conscience." *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012). "Mere negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process." *Id.*

The facts of the case show that the DNR received numerous complaints about the hunters' hunting and trespassing; Officers King and Smith investigated and verified the information in the complaints; witnesses signed witness statements and trespass forms; and the officers drew reasonable conclusions from the evidence. *See id.* at 734 ("Defendants may not be held liable merely for aggressively investigating the crime, believing witnesses, following leads, and discounting those pieces of evidence that do not fit with the evidence at the scene of the crime."); *Dickerson v. Mertz*, 547 N.W.2d 208, 215-16 (Iowa 1996) (affirming qualified immunity from federal constitutional claims for officers who relied on a witness statement and a deer found in a truck to issue citations for "taking deer by auto," and hunting without a valid license, although plaintiff was acquitted of all charges), *discussed in* **Baldwin**, 915 N.W.2d at 277. The hunters point to no evidence in the record that the officers intentionally or recklessly failed to investigate in a way that shocks the conscience. *See Winslow*, 696 F.3d at 732 (listing circumstances that "indicate reckless or intentional failure to investigate that shocks the conscience").

The district court properly granted summary judgment to the officers on the substantive due process claim.

* * * * * * *

The judgment is affirmed.

_____